602 S.E.2d 747

**MEDICAL UNIVERSITY OF SOUTH CAROLINA, Respondent,**

v.

**Dr. Philippe ARNAUD, Appellant.**

**No. 25866.**

Supreme Court of South Carolina.

Heard June 23, 2004.
Decided Sept. 7, 2004.

616

Francis T. Draine, of Columbia, for appellant.

Stephen L. Brown, Nancy Bloodgood, and Carol B. Ervin, of Young, Clement, Rivers & Tisdale, L.L.P., of Charleston, for respondent.

Justice MOORE:

Respondent (MUSC) filed a breach of contract and declaratory judgment action against appellant (Dr. Arnaud) following Dr. Arnaud's refusal to leave his employment. The trial court granted MUSC's motion for summary judgment. After certifying this case from the Court of Appeals pursuant to Rule 204(b), SCACR, we affirm.

## FACTS

Dr. Arnaud entered into an Agreement of Resignation (agreement) with MUSC in July 1998. In this agreement, Dr. Arnaud agreed to irrevocably resign his employment with MUSC's Department of Immunology and Microbiology as of June 30, 2002, in exchange for a ten percent increase in his base salary for the fiscal years of 1998/1999, 1999/2000, 2000/2001, and 2001/2002. No attempt was made to modify the agreement after signing.

In August 2001, Dr. Arnaud attended a seminar concerning the Teacher and Employee Retention Incentive (TERI) program. Dr. Arnaud's impression after the seminar was that if he entered TERI, his participation in the program would give him the right to keep his position at MUSC.[1]

As of October 1, 2001, Dr. Arnaud entered the TERI program, which did not affect his job in any manner. The Dean of MUSC wrote Dr. Arnaud a letter on October 22 informing him that, although he had entered the TERI program, he would still have to retire at the end of June 2002 pursuant to his agreement with MUSC.[2] Joe Good, General Counsel to MUSC, wrote a letter to Dr. Arnaud on December 10, 2001. In this letter, Good indicated that Dr. Arnaud's TERI participation would not alter the prior agreement and that Dr. Arnaud's employment would terminate in June 2002. However, in April 2002, counsel for Dr. Arnaud sent a letter to Good stating that Dr. Arnaud was entitled to work at MUSC

---

1. Pertinent portions of the TERI guidelines for state government state: (1) "Participants in the TERI program retain the same status and employment rights they held upon entering the program;" (2) "While program participants retain the same rights to their positions they held prior to entering the program, participation in the TERI program does not guarantee employment for the specified program period;" and (3) "Employees who enter the TERI program gain no new employment rights and are subject to the employment policies and procedures associated with whatever position(s) they occupy during the program period, to include those policies and procedures related to salary, benefits, and grievance rights." *See also* S.C.Code Ann. § 9-1-2210 (Supp.2003).

2. This letter was in response to Dr. Arnaud's letter requesting the Dean's approval of his entrance into the TERI program and indicating his plan to remain at MUSC until 2005. His letter did not reference the earlier resignation agreement.

for another five years from the date he entered the TERI program.[3]

During his deposition, Dr. Arnaud gave inconsistent testimony. He testified Good told him TERI superseded the agreement and that he could continue to work under TERI. However, he also testified he was not told by anyone that TERI would supersede his agreement. Specifically, Dr. Arnaud acknowledged that no one in his department had informed him that after he entered TERI, his previous agreement was no longer in effect and that he would be guaranteed a job for five years if he signed up for TERI. Dr. Arnaud stated that Good, the counsel for MUSC, told him resignation agreements could be changed and new agreements could be entered into, but, he acknowledged, counsel was not specifically talking about his agreement. Dr. Arnaud testified Good told him that, even though the agreement did not mention TERI, he could join TERI. Dr. Arnaud acknowledged that Good did not tell him he did not have to resign in June 2002.

Holly Maben, the benefits coordinator of MUSC, gave an affidavit in which she stated she told Dr. Arnaud the agreement controlled over his TERI application and he would have to terminate his employment on June 30, 2002, despite his TERI participation. She stated he was given five years on the TERI application only so he could continue TERI participation if he decided to work for another state employer when he left MUSC.[4]

The trial court found MUSC was entitled to summary judgment on its breach of contract claim and was entitled to specific performance in the form of Dr. Arnaud's immediate resignation. The court further found, pursuant to the declara-

---

3. MUSC sent appellant two more letters. The first letter indicated Dr. Arnaud's resignation was effective June 30, 2002. The second letter, dated July 1, 2002, instructed Dr. Arnaud to return his identification badge and any keys to the departmental space he held and to remove all personal items from his office.

4. The affidavit of Peggy Boykin, the director of the South Carolina State Retirement System, was also submitted. In this affidavit, Boykin, who was involved in the drafting of the TERI legislation, gave opinions regarding what the TERI legislation was and was not intended for. Boykin also gave specific opinions regarding how the TERI legislation applied to Dr. Arnaud's situation.

tory judgment action, that § 9–1–2210(A) does not alter a state employee's underlying employment rights or grant any additional employment rights to the employee while that employee participates in the TERI program.

## ISSUE

Did the trial court err by granting summary judgment to MUSC?

## DISCUSSION

■■■ Summary judgment is appropriate only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Cunningham ex rel. Grice v. Helping Hands, Inc.*, 352 S.C. 485, 575 S.E.2d 549 (2003). In determining whether any triable issues of fact exist for summary judgment purposes, the evidence and all the inferences that can be reasonably drawn from the evidence must be viewed in the light most favorable to the nonmoving party. *Id.*

■■■ Dr. Arnaud's contention that the court improperly granted summary judgment by ignoring disputed issues of material fact is without merit because any alleged disputed issues of fact exist solely due to Dr. Arnaud's own inconsistent statements in his deposition. Dr. Arnaud testified MUSC's counsel, Good, did *not* tell him he did not have to resign June 30, 2002, *i.e.* that the previous resignation agreement was nullified by participation in the TERI program. He also stated that *no one* told him participation in TERI would override the agreement. However, he also testified at various times that Good told him that entering in the TERI program superseded his previous agreement and that he could continue to work under TERI.

■■■ Given Dr. Arnaud's vacillation, his mere allegation that he was informed TERI superseded the agreement is not enough to survive a summary judgment motion. *See City of Columbia v. Town of Irmo*, 316 S.C. 193, 447 S.E.2d 855 (1994) (opposing party may not rest upon mere allegations, but must

respond with specific facts showing genuine issue). All that was presented to the trial court was Dr. Arnaud's bare assertion that he had been informed TERI nullified his previous agreement. In fact, the evidence is clear Dr. Arnaud was informed several times that he was expected to honor the agreement even though he had entered the TERI program.[5]

 Accordingly, the trial court did not err by granting summary judgment in favor of MUSC.[6] *See Cunningham ex rel. Grice v. Helping Hands, Inc., supra* (summary judgment appropriate only if no genuine issue of material fact and moving party entitled to judgment as matter of law). The remaining two issues raised by Dr. Arnaud are deemed abandoned given the arguments on those issues were conclusory. *See First Sav. Bank v. McLean,* 314 S.C. 361, 444 S.E.2d 513 (1994) (failure to provide arguments or supporting authority for an issue renders it abandoned).

**AFFIRMED.**

TOAL, C.J., WALLER, BURNETT and PLEICONES, JJ., concur.

---

5. We note that while the affidavit of Peggy Boykin, the director of the South Carolina State Retirement System, was also submitted, this affidavit is not admissible as evidence of legislative intent. *See Kennedy v. South Carolina Retirement Sys.,* 345 S.C. 339, 549 S.E.2d 243 (2001) (it is a settled principle in the interpretation of statutes that even where there is some ambiguity or some uncertainty in the language used, resort cannot be had to the opinions of legislators or of others concerned in the enactment of the law, for the purpose of ascertaining the intent of the legislature). Therefore, the trial court should not have considered this affidavit when deciding to grant summary judgment to MUSC.

6. Dr. Arnaud further argues the court erred by deciding the novel issue of the statutory construction of a state employee's retirement rights in a summary judgment proceeding. However, the mere fact a case involves a novel issue does not render summary judgment inappropriate. *ML–Lee Acquisition Fund, L.P. v. Deloitte & Touche,* 320 S.C. 143, 463 S.E.2d 618 (Ct.App.1995), *rev'd in part on other grounds,* 327 S.C. 238, 489 S.E.2d 470 (1997).