608 S.E.2d 155

BPS, INC., Appellant,

v.

William M. WORTHY, II and Carolina Benefit
Administrators of SC, Inc., Defendants,

Of Whom William M. Worthy, II, is the Respondent.

and

William M. Worthy, II, and Carolina Benefit Administrators
of SC, Inc., Third–Party Plaintiffs,

v.

Robert J. Dickey, Third–Party Defendant.

No. 3921.

Court of Appeals of South Carolina.

Heard Dec. 7, 2004.
Decided Jan. 10, 2005.

John D. Hawkins, of Spartanburg, A. Camden Lewis, Mark W. Hardee and Thomas A. Pendarvis, all of Columbia, for Appellant.

Ginger D. Goforth, Matthew E. Cox and Walter M. White, all of Spartanburg, for Respondent.

ANDERSON, J.:

BPS, Inc. appeals from a circuit court order granting summary judgment to William M. Worthy, II and from an order denying its motion to alter or amend. We reverse and remand.

## *FACTUAL/PROCEDURAL BACKGROUND*

BPS, Inc. (BPS) is a company which processes insurance claims as a third party administrator for corporations. Carolina Benefit Administrators of SC, Inc. (Carolina Benefit) administers insurance claims as a third party administrator for self-funded ERISA plans. In the summer of 2000, Robert J. Dickey, president of BPS, and William M. Worthy, II, president of Carolina Benefit, entered into negotiations for the sale of BPS's assets to Carolina Benefit. Around September 22, 2000, Carolina Benefit and BPS executed a letter of intent. Attorneys for both companies then began drafting an Asset Purchase Agreement.

Although no written agreement existed between the parties, Carolina Benefit provided an earnest money deposit of $100,000 to BPS in November of 2000. Thereafter, a transition team of BPS employees began working out of Carolina Benefit's offices, though they remained BPS employees. Dickey declared that Carolina Benefit received "access to computer and paper files containing information relating to the operations of BPS, Inc., including pricing, renewals and other information concerning customers of BPS, Inc."

In November of 2000, Carolina Benefit learned that various accounts in BPS's portfolio were leaving BPS. On November 22, 2000, Dickey signed a version of the Asset Purchase

Agreement, making handwritten changes before signing it. Worthy was on vacation at that time. Upon his return, Worthy was informed that BPS's largest account would not be renewed for the coming year. Worthy refused to sign the agreement. Dickey averred that at that time Carolina Benefit had already "taken possession of the BPS assets, employed its employees and begun servicing its clients."

In December of 2000, BPS filed a lawsuit against Carolina Benefit and Worthy seeking injunctive relief and damages. The amended complaint alleged causes of action for breach of contract, breach of contract accompanied by fraudulent act, promissory estoppel, quantum meruit, violation of the Unfair Trade Practices Act, intentional interference with a contract, fraud, negligent misrepresentation, and fraud in the inducement. Carolina Benefit and Worthy answered and filed a counterclaim against BPS and a cross-claim against Dickey.

> BPS sought an injunction to prevent Carolina Benefit
> from using the assets and name of BPS, Inc., from employing persons now or formerly employed by BPS, Inc., from contacting or otherwise doing business with any current or former client or customer of BPS, Inc., from utilizing any proprietary information, trade secret or other information obtained from BPS, Inc. in the course of its negotiations and purchase of assets from BPS, Inc., from entering into any contracts of any kind with clients, customers, employees or others now or formerly associated with Plaintiff . . . .

BPS filed various affidavits in support of the request for the temporary restraining order along with the complaint. A temporary restraining order was issued. Thereafter, a temporary injunction was ordered. The parties subsequently entered into a consent agreement in which Carolina Benefit agreed not to use BPS's assets and name or to use proprietary information or trade secrets obtained from BPS or its employees in the course of its negotiations for the purchase of BPS's assets. By order of the circuit judge, the "Plaintiff shall maintain the disputed $100,000 earnest money deposit in an interest-bearing escrow account until further order of this Court."

Worthy moved to dismiss the action against him individually. He filed an affidavit in support of his motion, as well as

excerpts from the depositions of Worthy and Dickey. The motion was heard before Judge Gary E. Clary on August 14, 2002. The trial court instructed counsel for Worthy to prepare a proposed order granting the motion to have Worthy dismissed as a defendant. The proposed order, mailed on August 27, 2002, noted: "Where matters outside the pleadings are presented to and not excluded by the Court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56. *See* Rule 12(b), SCRCP."

On August 30, before Judge Clary signed the order, BPS's attorney wrote to the court objecting to the conversion. Counsel for BPS argued that if the motion was to be treated as a motion for summary judgment, the entire depositions should be placed into the record. A complete copy of Dickey's deposition was attached to the letter.

Judge Clary did not reply to this letter, but directed that the letter from BPS's attorney and Dickey's deposition be "filed in the Court file." Counsel for Carolina Benefit and Worthy did not object. Nonetheless, Judge Clary signed the order as proposed on September 6, 2002. The order referenced the depositions of both Worthy and Dickey in setting forth the facts, but stated: "[BPS] failed to submit any affidavits so the facts before the Court are those as set forth by the Affidavits and Deposition excerpts provided by Defendant/Third–Party Plaintiff Worthy." The order granted Worthy's motion for summary judgment as to individual liability.

BPS filed a motion to alter or amend. In the interim, Judge Clary left the bench. The motion to alter or amend was heard before Judge Larry Patterson. Judge Patterson denied the motion.

## STANDARD OF REVIEW

When reviewing the grant of a summary judgment motion, the appellate court applies the same standard which governs the trial court under Rule 56(c), SCRCP: summary judgment is proper when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *White v. J.M. Brown Amusement Co.*, 360 S.C. 366, 601 S.E.2d 342 (2004); *B & B Liquors, Inc. v. O'Neil*, 361 S.C. 267, 603 S.E.2d 629 (Ct.App.2004); *Redwend Ltd. P'ship v.*

*Edwards,* 354 S.C. 459, 581 S.E.2d 496 (Ct.App.2003). In determining whether any triable issue of fact exists, the evidence and all inferences which can reasonably be drawn therefrom must be viewed in the light most favorable to the nonmoving party. *Medical Univ. of South Carolina v. Arnaud,* 360 S.C. 615, 602 S.E.2d 747 (2004); *McNair v. Rainsford,* 330 S.C. 332, 499 S.E.2d 488 (Ct.App.1998). If triable issues exist, those issues must go to the jury. *Baril v. Aiken Reg'l Med. Ctrs.,* 352 S.C. 271, 573 S.E.2d 830 (Ct.App.2002); *Young v. South Carolina Dep't of Corrections,* 333 S.C. 714, 511 S.E.2d 413 (Ct.App.1999).

Summary judgment is appropriate where the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Belton v. Cincinnati Ins. Co.,* 360 S.C. 575, 602 S.E.2d 389 (2004); *McCall v. State Farm Mut. Auto. Ins. Co.,* 359 S.C. 372, 597 S.E.2d 181 (Ct.App.2004); Rule 56(c), SCRCP; *see also Higgins v. Medical Univ. of South Carolina,* 326 S.C. 592, 486 S.E.2d 269 (Ct.App.1997) (noting that when ruling on motion for summary judgment, trial judge must consider all of the documents and evidence within the record, including pleadings, depositions, answers to interrogatories, admissions on file, and affidavits). All ambiguities, conclusions, and inferences arising from the evidence must be construed most strongly against the moving party. *Schmidt v. Courtney,* 357 S.C. 310, 592 S.E.2d 326 (Ct.App.2003); *Bayle v. South Carolina Dep't of Transp.,* 344 S.C. 115, 542 S.E.2d 736 (Ct.App. 2001); *see also Ferguson v. Charleston Lincoln Mercury, Inc.,* 349 S.C. 558, 563, 564 S.E.2d 94, 96 (2002) ("On appeal from an order granting summary judgment, the appellate court will review all ambiguities, conclusions, and inferences arising in and from the evidence in a light most favorable to the nonmoving party below.").

■■■ Summary judgment is not appropriate where further inquiry into the facts of the case is desirable to clarify the application of the law. *Brockbank v. Best Capital Corp.,* 341 S.C. 372, 534 S.E.2d 688 (2000); *Hawkins v. City of Greenville,* 358 S.C. 280, 594 S.E.2d 557 (Ct.App.2004). Summary judgment should not be granted even when there is no dispute

as to evidentiary facts if there is disagreement concerning the conclusion to be drawn from those facts. *Moriarty v. Garden Sanctuary Church of God,* 341 S.C. 320, 534 S.E.2d 672 (2000); *Ellis v. Davidson,* 358 S.C. 509, 595 S.E.2d 817 (Ct.App.2004). However, when plain, palpable, and indisputable facts exist on which reasonable minds cannot differ, summary judgment should be granted. *Hedgepath v. American Tel. & Tel. Co.,* 348 S.C. 340, 559 S.E.2d 327 (Ct.App.2001); *Pye v. Aycock,* 325 S.C. 426, 480 S.E.2d 455 (Ct.App.1997).

The purpose of summary judgment is to expedite disposition of cases which do not require the services of a fact finder. *Dawkins v. Fields,* 354 S.C. 58, 580 S.E.2d 433 (2003); *Rumpf v. Massachusetts Mut. Life Ins. Co.,* 357 S.C. 386, 593 S.E.2d 183 (Ct.App.2004). Because it is a drastic remedy, summary judgment should be cautiously invoked to ensure that a litigant is not improperly deprived of a trial on disputed factual issues. *Helena Chem. Co. v. Allianz Underwriters Ins. Co.,* 357 S.C. 631, 594 S.E.2d 455 (2004); *Hawkins,* 358 S.C. at 289, 594 S.E.2d at 561–62; *Murray v. Holnam, Inc.,* 344 S.C. 129, 542 S.E.2d 743 (Ct.App.2001).

### *LAW/ANALYSIS*

BPS argues that: (1) Judge Clary erred in granting summary judgment to Worthy; (2) summary judgment should not have been granted until discovery was complete; and (3) Judge Patterson erred "in his determination that he had no authority to alter and amend the summary judgment order of Judge Clary."

### I. SUMMARY JUDGMENT

#### A. Basis and Reasons for the Summary Judgment Order in Case *Sub Judice*

The dispositive issue is whether the circuit court erred in granting summary judgment to Worthy. BPS contends Judge Clary's order erroneously found that BPS had failed to submit any affidavits in opposition to Worthy's motion to dismiss, and thus based its findings solely on Worthy's affidavits. We agree.

Here, the affidavits in support of the temporary injunction were filed with the complaint. It is undisputed that the affidavits were in the record at the time the motion was heard. Furthermore, Judge Clary inserted Dickey's full deposition into the record before he signed the order. Worthy did not object to this action. Judge Clary had the excerpts from the deposition testimony in the submissions from Worthy. Thus, the circuit court erred in refusing to consider all of the evidence in the record, and in failing to view the evidence in the light most favorable to the non-moving party.

Clearly, many issues in the case remained in dispute. BPS brought nine causes of action in addition to the request for an injunction. Worthy should not have been dismissed from the action unless it was clear that BPS could not establish prima facie liability on any of them.

Worthy claims that as an officer of Carolina Benefit, he is immune from liability. He cites *Hunt v. Rabon*, 275 S.C. 475, 272 S.E.2d 643 (1980), for this proposition. In *Hunt*, the Supreme Court articulated:

Generally the reason for the creation of a corporation is to limit liability. While there are instances in which directors and/or trustees and officers may be personally liable, an officer or a director of a corporation is not, merely as a result of his standing as such, personally liable for torts of corporate employees. To incur liability he must ordinarily be shown to have in some way participated in or directed the tortious act. . . . .

We find the following relevant rule in 19 Am.Jur.2d *Corporations*, 4, Liability for Torts:

§ 1382. Generally.

A director or officer of a corporation does not incur personal liability for its torts merely by reason of his official character; he is not liable for torts committed by or for the corporation unless he has participated in the wrong. Accordingly, directors not parties to a wrongful act on the part of other directors are not liable therefor. If, however, a director or officer commits or participates in the commission of a tort, whether or not it is also by or for the corporation, he is liable to third persons injured thereby, and it does not matter what liability attaches to the corporation for the tort . . . .

§ 1383.   Liability for acts of subordinate officers, agents, or employees.

Ordinarily, a director is not liable for the tortious acts of officers, agents, or employees of the corporation, unless he participated therein or authorized the wrongful act.   It is held that directors cannot be held liable for the acts of subordinate officers which they neither participated in nor sanctioned, and where they could not, in the exercise of ordinary and reasonable supervision, have detected the wrongdoing of such subordinate officers . . . .

In 19 C.J.S. *Corporations* § 845–Torts, the rule is stated in this way:

"A director, officer, or agent is not liable for torts of the corporation or of other officers or agents merely because of his office.   He is liable for torts in which he has participated or which he has authorized or directed."

*Id.* at 477–78, 272 S.E.2d at 644.

Nothing in the law shields Worthy from direct liability in tort for his own actions.   *See Rowe v. Hyatt*, 321 S.C. 366, 369, 468 S.E.2d 649, 650 (1996) ("An officer, director, or controlling person in a corporation is not, merely as a result of his or her status as such, personally liable for the torts of the corporation.   To incur liability, the officer, director, or controlling person must ordinarily be shown to have in some way participated in or directed the tortious act.").   Worthy is personally liable for any tortious acts he participated in or directed.

Additionally, Worthy is liable for unfair trade practices that he personally committed.   "[I]n private actions under the UTPA, directors and officers are not liable for the corporation's unfair trade practices *unless* they personally commit, participate in, direct, or authorize the commission of a violation of the UTPA." *Plowman v. Bagnal,* 316 S.C. 283, 286, 450 S.E.2d 36, 38 (1994) (emphasis added); *see also Donsco, Inc. v. Casper Corp.,* 587 F.2d 602 (3rd.   Cir.1978) (finding that corporate officer is individually liable for unfair competition in which he participates); *Moy v. Schreiber Deed Sec. Co.,* 370 Pa.Super. 97, 535 A.2d 1168 (1988) (stating that corporate president could be held individually liable under the participation theory for acts of unfair competition which he person-

ally committed); *Great Am. Homebuilders, Inc. v. Gerhart*, 708 S.W.2d 8 (Tex.App.1986) (determining that corporate officer who knowingly participates in deceptive trade practice may be held individually liable).

Similarly, the corporate veil does not protect Worthy from liability for his own actions. Section 33–6–220(b) (1999) of the South Carolina Code states: "Unless otherwise provided in the articles of incorporation, a shareholder of a corporation is not personally liable for the acts or debts of the corporation *except that he may become personally liable by reason of his own acts or conduct.*" (Emphasis added).

██ Worthy asserts that even if the claims apply to him, BPS failed to establish liability based on the evidence presented. Viewing the evidence in the light most favorable to BPS, we conclude there is sufficient evidence in the record to survive summary judgment. First, two of the affidavits of BPS employees alleged that "Mr. Worthy got what he wanted without having to pay." Second, there was evidence that Worthy and Carolina Benefit took possession of BPS assets, employed its employees, and began servicing its clients while intending not to execute the agreement. Third, some files and a computer were taken after Dickey had been assured the parties had reached an agreement. The verbiage and language of the order of the circuit judge reveals indubitably that the court did not consider any of this evidence or give efficacy to the complete depositions of Worthy and Dickey. Therefore, the circuit court erred in granting summary judgment to Worthy.

## B. Discovery

██ BPS maintains the granting of summary judgment was improper because discovery was incomplete. Summary judgment must not be granted until the opposing party has had a full and fair opportunity to complete discovery. *Doe v. Batson*, 345 S.C. 316, 548 S.E.2d 854 (2001); *Baughman v. American Tel. & Tel. Co.*, 306 S.C. 101, 410 S.E.2d 537 (1991); *see also Schmidt v. Courtney*, 357 S.C. 310, 319, 592 S.E.2d 326, 331 (Ct.App.2003) ("Because summary judgment is a drastic remedy, it must not be granted until the opposing party has had a 'full and fair opportunity to complete discovery.'").

■ There may exist a possible query as to whether this issue was raised to the circuit court either during the hearing or during the Rule 59(e), SCRCP motion. That conundrum is answered directly and completely in the actions and positions taken and argued before the circuit court issued the order granting summary judgment. Specifically, BPS was faced with a motion to dismiss pursuant to Rule 12(b)(6), SCRCP, dated July 26, 2002. On August 30, 2002, BPS objected to the conversion of the 12(b)(6) motion to a motion for summary judgment. Despite the objection posed by BPS, the circuit judge treated the original 12(b)(6) motion as a motion for summary judgment under Rule 56, SCRCP. Without utilizing completion of discovery as a ground for opposition to the conversion activity of the circuit judge, BPS voiced a position in contra to the ruling of the circuit judge that encapsulates the need for further discovery activities. BPS submitted Dickey's complete deposition as an active response to the conversion of the original 12(b)(6) motion.

The Rule 59(e) motion filed by BPS professed:

1. On Page 3 of Judge Clary's Order he states that "the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56. See Rule 12(b), SCRCP." However, no notice that the motion would be converted from a Motion to Dismiss to a Motion for Summary Judgment was given.

2. "... Summary judgment is not appropriate where further inquiry into the facts of the case is desirable to clarify the application of the law."

. . . .

6. Mr. John Hawkins, co-counsel for the Plaintiff and Third–Party Defendant, wrote to Judge Clary on August 30, 2002, asking that if indeed the Court intended to convert this matter to a Motion for Summary Judgment, the Plaintiff and Third–Party Defendant should be allowed a *"reasonable opportunity to present all material made pertinent to such a motion by Rule 56."* Rule 12(b), SCRCP. As stated in the accompanying affidavit of Mr. Hawkins, a review of the Court file shows that Judge Clary granted his request that the deposition of Mr. Dickey be placed in the record. (Emphasis added).

Luculently, this issue is encompassed within the virginal, continuing, and briefed factual and legal occurrences depicted in the record on appeal in its entirety.

The circuit judge committed reversible error in proceeding to consider and convert the initial Rule 12(b)(6) motion to a motion for summary judgment without giving BPS adequate and reasonable opportunity and time to present all materials pertinent to a Rule 56 motion.

## II. MOTION TO ALTER OR AMEND

BPS avers that Judge Patterson erred in refusing to reach the merits in denying BPS's motion to alter or amend. Because we find that summary judgment was improper, we do not reach this issue. Regardless of how the circuit court ruled on the motion to alter or amend, the fact that the issues were raised and a ruling obtained was sufficient to preserve them for appeal.

## *CONCLUSION*

Accordingly, we **REVERSE** the circuit court's order granting summary judgment to Worthy and **REMAND** this case for trial.

**REVERSED and REMANDED.**

STILWELL and SHORT, JJ., concur.