649 S.E.2d 153

**Ernest Lamar BRADLEY and Esther K. Bradley, Appellants,**

v.

**John DOE and AccuSweep, Inc., Respondents.**

No. 4274.

Court of Appeals of South Carolina.

Submitted May 9, 2007.

Decided July 6, 2007.

Rehearing Denied Aug. 27, 2007.

Donald Higgins Howe and Walter Bilbro, Jr., of Charleston, for Appellants.

Margaret Helen Fanning, of Charleston, for Respondents.

ANDERSON, J.

Ernest Lamar Bradley (Bradley) appeals the trial court's decision granting John Doe (Doe) summary judgment on Bradley's claim for recovery under his uninsured motorist coverage.[1]  Bradley (1) contends the trial court erred in finding no one independently witnessed Bradley's accident, and (2) maintains independent witnesses existed to provide circumstantial evidence that an unknown vehicle caused the accident.  We affirm.[2]

---

1.  Ernest Bradley is joined by his wife Ester as "Appellants," and John Doe is joined by Accusweep, Inc. as "Respondents."  However, for purposes of this appeal, we refer only to Ernest Bradley and John Doe.

2.  We decide this case without oral argument pursuant to Rule 215, SCACR.

## FACTUAL/PROCEDURAL BACKGROUND

On December 18, 2002, Bradley left the Waffle House restaurant at approximately 3:00 a.m. and began driving home. After traveling less than one-quarter mile on College Park Road in Ladson, South Carolina, Bradley swerved to avoid an object in the northbound lane. Bradley lost control of his vehicle, veered off the road, and struck a tree.

Bradley telephoned his son, whom he left minutes earlier at the Waffle House, to come and assist him. After summoning his son Bradley walked to the side of the road and began signaling for help with a flashlight. At about 3:15 a.m., United States Air Force Lieutenant Colonel Clifton Douglas, Jr. drove passed Bradley, turned his vehicle around, and headed toward the accident scene. When Douglas returned in the northbound lane he saw a "large white garbage can bag" in the middle of his lane. Douglas parked his vehicle, approached Bradley, and observed that Bradley was bleeding from a head laceration. While helping Bradley, Douglas heard another passing vehicle strike and drag the garbage bag down the road. Bradley's son and daughter subsequently arrived and noted the trash bag and trash scattered on the roadway.

Bradley's friend, Thomas Bosley, had been with Bradley at the Waffle House. As Bosley drove home on College Park Road minutes before Bradley, he saw "a large trash bag in the middle of the [northbound] lane," less than one-quarter mile from the restaurant. Bosley claimed he narrowly avoided the garbage bag and continued driving about another quarter-mile on College Park Road when he encountered a "white street sweeper's truck." Bosley observed this truck "drop another similar trash bag onto the public roadway." He learned the next morning about Bradley's accident.

Bradley brought this action against his insurer to collect under the uninsured motorist provision of his policy. The insurer represented Doe as the unknown driver. Doe moved for summary judgment arguing Bradley failed to satisfy the statutory requirement for recovery under the uninsured policy provision because no one independently witnessed Bradley's accident. The trial court granted Doe's summary judgment

motion and denied Bradley's motion to alter or amend the judgment.

## STANDARD OF REVIEW

In reviewing the grant of a motion for summary judgment, the appellate court applies the same standard of review as the trial court under Rule 56, SCRCP. *Pye v. Estate of Fox*, 369 S.C. 555, 563, 633 S.E.2d 505, 509 (2006). Summary judgment is proper when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Rule 56(c), SCRCP ("The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."); *Madison ex rel. Bryant v. Babcock Center, Inc.*, 371 S.C. 123, 134, 638 S.E.2d 650, 655 (2006); *Houck v. State Farm Fire & Cas. Ins. Co.*, 366 S.C. 7, 11, 620 S.E.2d 326, 329 (2005); *Pittman v. Grand Strand Entm't, Inc.*, 363 S.C. 531, 536, 611 S.E.2d 922, 925 (2005); *B & B Liquors, Inc. v. O'Neil*, 361 S.C. 267, 270, 603 S.E.2d 629, 631 (Ct.App.2004). In determining whether any triable issues of fact exist, the evidence and all reasonable inferences therefrom must be viewed in the light most favorable to the nonmoving party; *Medical Univ. of South Carolina v. Arnaud*, 360 S.C. 615, 619, 602 S.E.2d 747, 749 (2004); *Rife v. Hitachi Constr. Mach. Co., Ltd.*, 363 S.C. 209, 213, 609 S.E.2d 565, 567 (Ct.App.2005).

The party seeking summary judgment has the burden of clearly establishing the absence of a genuine issue of material fact. *Jones v. State Farm Mut. Auto. Ins. Co.*, 364 S.C. 222, 228, 612 S.E.2d 719, 722 (Ct.App.2005) (citing *McCall v. State Farm Mut. Auto. Ins. Co.*, 359 S.C. 372, 376, 597 S.E.2d 181, 183 (Ct.App.2004)). Once the party moving for summary judgment meets the initial burden of showing an absence of evidentiary support for the opponent's case, the opponent cannot simply rest on mere allegations or denials contained in the pleadings. *Id.* citing *Regions Bank v. Schmauch*, 354 S.C. 648, 660, 582 S.E.2d 432, 438 (Ct.App.2003). Rather, the nonmoving party must come forward with specific facts showing there is a genuine issue for trial. *Jones*, 364 S.C. at 228,

612 S.E.2d at 722 (citation omitted). The purpose of summary judgment is to expedite disposition of cases which do not require the services of a fact finder. *Id.* "Summary judgment is a drastic remedy which should be cautiously invoked so that a litigant is not improperly deprived of a trial on disputed factual issues." *BPS, Inc. v. Worthy,* 362 S.C. 319, 326, 608 S.E.2d 155, 159 (Ct.App.2005).

## *LAW/ANALYSIS*

Bradley asserts the trial court erred in granting Doe's summary judgment motion. Specifically, Bradley urges that he satisfied the independent witness requirement in section 38–77–170(2) of the South Carolina Code of Laws by providing testimony from independent witnesses regarding circumstantial evidence of an unknown driver's negligence. We disagree.

### I.   Requirements of S.C.Code Ann. § 38–77–170

Section 38–77–170 establishes the conditions under which an insured may recover uninsured motorist coverage when the owner or operator of the motor vehicle causing injury or damage is unknown:

> If the owner or operator of any motor vehicle which causes bodily injury or property damage to the insured is unknown, there is no right of action or recovery under the uninsured motorist provision, *unless:*
>
> (1) the insured or someone in his behalf has reported the accident to some appropriate police authority within a reasonable time, under all the circumstances, after its occurrence;
>
> (2) the injury or damage was caused by physical contact with the unknown vehicle, *or* the accident must have been witnessed by someone other than the owner or operator of the insured vehicle; provided however, the witness must sign an affidavit attesting to the truth of the facts of the accident contained in the affidavit;
>
> (3) the insured was not negligent in failing to determine the identity of the other vehicle and the driver of the other vehicle at the time of the accident.

S.C.Code Ann. § 38–77–170 (2002) (emphasis added).

Where there is no physical contact with a vehicle driven by an unknown motorist, someone other than the owner or opera-

tor of the insured vehicle must have witnessed the accident and attest to the facts of the accident in a signed affidavit. *See Wausau Underwriters Insurance Company v. Howser,* 309 S.C. 269, 274–75, 422 S.E.2d 106, 110 (1992) (holding "no physical contact with the unknown vehicle is necessary when a witness other than the owner or driver of the insured vehicle is available to attest to the facts of the accident.").

## II. Rules of Statutory Construction

The primary rule of statutory construction is to ascertain and give effect to the intent of the legislature. *Mid–State Auto Auction of Lexington, Inc. v. Altman,* 324 S.C. 65, 69, 476 S.E.2d 690, 692 (1996); *Shealy v. Doe,* 370 S.C. 194, 199, 634 S.E.2d 45, 48 (Ct.App.2006). The first question of statutory interpretation is whether the statute's meaning is clear on its face. *Wade v. Berkeley County,* 348 S.C. 224, 229, 559 S.E.2d 586, 588 (2002); *Eagle Container Co., LLC v. County of Newberry,* 366 S.C. 611, 622, 622 S.E.2d 733, 738 (Ct.App. 2005) *(cert. granted* January 31, 2007).

When a statute's language is plain and unambiguous, and conveys a clear and definite meaning, the rules of statutory interpretation are not needed, and this Court has no right to impose another meaning. *Catawba Indian Tribe of South Carolina v. State,* 372 S.C. 519, 524–26, 642 S.E.2d 751, 754 (2007); *see Vaughn v. Bernhardt,* 345 S.C. 196, 198, 547 S.E.2d 869, 870 (2001). "[T]he words of the statute must be given their plain and ordinary meaning without resorting to subtle or forced construction to limit or expand the statute's operation." *Mun. Ass'n of S.C. v. AT&T Communications of S. States, Inc.,* 361 S.C. 576, 580, 606 S.E.2d 468, 470 (2004); *see also Miller v. Doe,* 312 S.C. 444, 447, 441 S.E.2d 319, 321 (1994) ("In determining the meaning of a statute, the terms used therein must be taken in their ordinary and popular meaning, nothing to the contrary appearing.").

The legislature's intent should be ascertained primarily from the plain language of the statute. *Jones v. State Farm Mut. Auto. Ins. Co.,* 364 S.C. 222, 230, 612 S.E.2d 719, 723 (Ct.App.2005) (citing *State v. Landis,* 362 S.C. 97, 102, 606 S.E.2d 503, 506 (Ct.App.2004); *Stephen v. Avins Const. Co.,* 324 S.C. 334, 339, 478 S.E.2d 74, 77 (Ct.App.1996)). What a legislature says in the text of a statute is considered the best

evidence of the legislative intent or will. *Jones,* 364 S.C. at 230, 612 S.E.2d at 723 (citing *Bayle v. South Carolina Dept. of Transp.,* 344 S.C. 115, 122, 542 S.E.2d 736, 740 (Ct.App.2001)). The language must be read in a sense which harmonizes with its subject matter and accords with its general purpose. *Jones,* 364 S.C. at 230, 612 S.E.2d at 723 (citing *Hitachi Data Sys. v. Leatherman,* 309 S.C. 174, 178, 420 S.E.2d 843, 846 (1992)). The court's primary function in interpreting a statute is to ascertain the intent of the General Assembly. *Smith v. South Carolina Ins. Co.,* 350 S.C. 82, 87, 564 S.E.2d 358, 361 (Ct.App.2002). "Once the legislature has made [a] choice, there is no room for the courts to impose a different judgment based upon their own notions of public policy." *South Carolina Farm Bureau Mut. Ins. Co. v. Mumford,* 299 S.C. 14, 19, 382 S.E.2d 11, 14 (Ct.App.1989).

If the language of an act gives rise to doubt or uncertainty as to legislative intent, the construing court may search for that intent beyond the borders of the act itself. *State v. Morgan,* 352 S.C. 359, 367, 574 S.E.2d 203, 207 (Ct.App.2002). "Statutes, as a whole, must receive practical, reasonable, and fair interpretation, consonant with the purpose, design, and policy of lawmakers." *Collins Music Co., Inc. v. IGT,* 365 S.C. 544, 550, 619 S.E.2d 1, 3 (Ct.App.2005) (quoting *TNS Mills, Inc. v. South Carolina Dep't of Revenue,* 331 S.C. 611, 624, 503 S.E.2d 471, 478 (1998)). Courts will reject a statutory interpretation which would lead to a result so plainly absurd that it could not have been intended by the legislature or would defeat the plain legislative intention. *Jones,* 364 S.C. at 230, 612 S.E.2d at 723 (citing *Unisun Ins. Co. v. Schmidt,* 339 S.C. 362, 368, 529 S.E.2d 280, 283 (2000); *Kiriakides v. United Artists Communications, Inc.,* 312 S.C. 271, 275, 440 S.E.2d 364, 366 (1994)). A court should not consider a particular clause in a statute as being construed in isolation, but should read it in conjunction with the purpose of the whole statute and the policy of the law. *See Hinton v. South Carolina Dept. of Prob., Parole and Pardon Servs.,* 357 S.C. 327, 333, 592 S.E.2d 335, 338 (Ct.App.2004); *Doe v. Roe,* 353 S.C. 576, 580, 578 S.E.2d 733, 735–36 (Ct.App.2003).

### III. Interpretation of S.C.Code Ann § 38–77–170

"The issue of interpretation of a statute is a question of law for the court." *Catawba Indian Tribe,* 372 S.C. at 519, 642

S.E.2d at 754 (citing *Charleston County Parks & Recreation Comm'n v. Somers*, 319 S.C. 65, 67, 459 S.E.2d 841, 843 (1995) ("The determination of legislative intent is a matter of law.")).

Section 38–77–170(2) is clear on its face. It expressly requires that someone other than the owner or operator of the insured vehicle witness the accident. "The plain language of § 38–77–170(2) requires that where the accident involves no physical contact between the insured's vehicle and the unidentified vehicle, the accident 'must have been witnessed by someone other than the owner or operator of the insured vehicle' and the 'witness must sign an affidavit attesting to the truth of the facts of the accident contained therein.'" *Collins v. Doe*, 352 S.C. 462, 470, 574 S.E.2d 739, 744 (2002).

> The Legislature first enacted a "John Doe" statute in 1963, recognizing an insured's right to receive uninsured motorist coverage for injuries caused by unknown drivers. Since the statute's enactment, the Legislature placed safeguards within the statute to prevent citizens from bringing fraudulent "John Doe" actions. The initial safeguard was a requirement that the unknown vehicle make "physical contact" with the plaintiff's car. Act No. 312, 1963 S.C. Acts 535.
>
> Then in 1987, the Legislature amended the statute once again to allow insureds to bring a "John Doe" action regardless of physical contact as long as an independent person witnessed the accident. Act. No. 166, 1987 S.C. Acts 1122.

*Shealy v. Doe*, 370 S.C. 194, 202, 634 S.E.2d 45, 49 (Ct.App. 2006) *cert. pending* (citing *Gilliland v. Doe*, 357 S.C. 197, 199–200, 592 S.E.2d 626, 627–28 (2004)).

> The legislature again amended the statute in 1989, and added the sworn affidavit requirement. The statute at large effecting this most recent amendment provides that the act is "to amend section 38–77–170 relating to the requirements to recover under the uninsured motorist provisions when the at-fault party is unknown, so as to require a witness to the accident to sign an affidavit attesting to the truth of the facts about the accident and to provide a warning statement to be displayed on the affidavit." Act No. 148, 1989 S.C. Acts 439.

*Collins*, 352 S.C. at 466, 574 S.E.2d at 741.

In *Collins*, our supreme court concluded that "[t]he legislature unambiguously required that a plaintiff seeking to recov-

er against her uninsured motorist coverage for the negligence of an unknown John Doe driver strictly comply with the plain language of the statute." 352 S.C. at 466, 574 S.E.2d at 741. In order to avoid colliding with vehicle driven by an unknown driver, Collins swerved and collided with another vehicle. *Id.* at 464–65, 574 S.E.2d at 740. She sustained injuries and sought recovery under her uninsured policy provision. *Id.* Although Collins did not produce a witness-signed affidavit at trial, she produced a witness at trial who testified the unknown driver caused Collins' collision. *Id.* Collins argued the witness' testimony satisfied the statutory requirements under section 38–77–170(2). *Id.*

Citing *Criterion Ins. Co. v. Hoffmann,* 258 S.C. 282, 188 S.E.2d 459, (1972), the *Collins* court reiterated the historical reasoning underlying the strict compliance requirement:

The right to sue and collect from one's own liability insurance carrier in case of a loss caused by a hit-and-run driver or other driver of an uninsured automobile is a creature of the legislature. Except for the statute, and endorsements required, no right exists to recover from one's own insurance carrier. One must look to the terms of the uninsured motorist statute and policy endorsements and comply therewith to get the benefit of law. . . .

It is the province of the lawmakers to create a right of action, to provide for process and to declare the procedure for collecting from one's own insurance carrier. . . .

The terms of the statute ... are clear and not ambiguous. This being true, there is no room for construction and we are required to apply the statute according to its literal meaning. Most courts take a liberal view when dealing with the question of coverage; however, the procedural obligations that the insured must discharge in order to recover, since they are prescribed by statute, are viewed by the courts as mandatory, and strict compliance with them is a prerequisite to recover.

*Collins,* 352 S.C. at 467–68, 574 S.E.2d at 741–42 (quoting *Criterion,* 258 S.C. at 290–92, 188 S.E.2d at 462–63).

The court held strict compliance was mandatory and reversed the court of appeals' ruling that testimony at trial was the "functional equivalent" of a signed affidavit. *Collins,* 352

S.C. at 471, 574 S.E.2d at 743. "The statute makes no provision for the functional equivalent of an affidavit." *Id.* Consequently, the court declined to create an exception in the statute where none previously existed. *Id.*

In *Gilliland v. Doe,* our supreme court considered "to what extent an independent witness must testify about the causal connection between the unknown vehicle and the accident ..." in order to comply with section 38–77–170(2). 357 S.C. at 200, 592 S.E.2d at 628. Gilliland crashed into a tree after being run off the road by an unknown vehicle. *Id.* at 198, 592 S.E.2d at 627. A witness waiting to enter the same roadway saw Gilliland crash, but did not see the unknown vehicle. *Id.* However, before the accident the witness did observe two sets of oncoming headlights. *Id.* After Gilliland's crash the witness noticed the second set of headlights "arcing through a field," as if making a u-turn and leaving the accident scene. *Id.*

Addressing the requirement that an independent witness must attest to "the truth of the facts of the accident," the *Gilliland* court agreed with the court of appeals' interpretation that the witness must "be able to attest to the circumstances surrounding the accident, i.e., what actions of the unknown driver contributed to the accident." *Id.* at 200, 592 S.E.2d at 628. The court concluded the witness's attestation provided circumstantial evidence supporting Gilliland's testimony "that an unknown driver contributed to her accident." *Id.* at 202, 592 S.E.2d at 629. Specifically, the court determined the witness, in addition to observing the accident, "saw the lights of an unknown car that was turning around and fleeing the scene of the accident." *Id.* (citing *Marks v. Indus. Life & Health Ins. Co.,* 212 S.C. 502, 505, 48 S.E.2d 445, 446 (1948) ("The attending circumstances along with direct testimony may be taken into account by the jury in arriving at its decision as any fact in issue may be established by circumstantial evidence, if the circumstances, which must themselves be proven lead to the conclusion with reasonable certainty.")).

In contrast to the holding in *Collins,* the *Gilliland* court reasoned the "fact requirement in section 38–77–170(2) was 'arguably ambiguous' and 'therefore, a strict interpretation ... would undermine the statute's purpose.'" *Gilliland,* 357 S.C. at 201, 592 S.E.2d at 628. The plaintiff in *Shealy v. Doe,*

370 S.C. 194, 200, 634 S.E.2d 45, 48 (2006), attempted to broaden *Gilliland* by urging that evidence other than the personal observations of an independent eye witness might satisfy section 38–77–170(2). In *Shealy,* two men riding in a truck bed were thrown from the vehicle and injured when the driver swerved suddenly to allegedly avoid hitting an unknown vehicle. *Id.* at 196, 634 S.E.2d at 46. Shealy submitted an affidavit stating the driver of the truck told him he swerved to avoid colliding with an unknown vehicle. *Id.* at 197, 634 S.E.2d at 46. We held Shealy's affidavit did not satisfy the independent witness requirement under section 38–77–170(2). *Id.* at 198, 634 S.E.2d at 47.

Shealy asserted section 38–77–170(2) did not require the witness's affidavit to be based on personal knowledge. This court concluded that argument directly contravene[d] the language of the statute:

> Shealy submitted affidavits of two people who apparently did not witness the accident; their affidavits do not attest to facts they perceived, but merely restate the perceptions of the vehicle's operator. Thus Shealy produced no evidence that someone other than [ ], the operator of the insured vehicle, witnessed the accident. [The] affidavits do not comply with th[e] express directive [in section 38–77–170(2) ].

*Id.* at 200, 634 S.E.2d at 48.

> We reasoned that
> Shealy's interpretation of section 38–77–170(2) would totally eviscerate the statute's efficacy as it would allow an owner or operator to inform any third-party of the facts of the accident and have that third-party swear out an affidavit as to the owner or operator's version of the events. In *Collins,* our supreme court elucidated that the "obvious purpose" of the affidavit requirement of section 38–77–170(2) is "fraud prevention." Shealy's reading of the statute would circumvent the fraud-preventing function of subsection (2), rendering that section meaningless.

*Id.* at 200–201, 634 S.E.2d at 48–49 (internal citation omitted).

Relying on *Gilliland,* Shealy maintained the affiants provided circumstantial evidence of the accident sufficient to comply with section 38–77–170(2). *Id.* at 201, 634 S.E.2d at 49. We

distinguished *Gilliland*, explaining the affidavits Shealy submitted, unlike those in *Gilliland*, did not contain circumstantial evidence based on independent personal knowledge that supported the driver's version of the accident. *Id.* at 205, 634 S.E.2d at 51. At best, Shealy's affidavits merely repeated the driver's account of what happened and did not independently corroborate the driver's version of the accident. *Id.*

> The purpose of section 38–77–120(2) is to prevent fraud. Concomitantly, the affidavit of the independent witness must contain some independent evidence that an unknown vehicle was involved in the accident. Shealy failed to satisfy the statute's mandate; thus, the court properly granted summary judgment.

*Id.*

### IV. The Factual Record

The sole issue for consideration in the case *sub judice* is whether the circumstantial evidence provided by Bradley's affiants complies with the statutory mandate in section 38–77–170(2). We hold it does not.

Bradley relies on *Gilliland* in maintaining that circumstantial evidence provided by independent witnesses is sufficient to survive summary judgment. However, Bradley overlooks that the affiant in *Gilliland* contemporaneously witnessed both the collision and the headlights of an unknown vehicle turning and leaving the scene. The witness's testimony, based on her personal observations, independently corroborated Gilliland's account of how that accident occurred.

Here, Bradley was the only witness to the accident. None of the affiants actually saw Bradley swerve to avoid a trash bag in the road and collide with the tree. By Bradley's own testimony, he initially thought it was an injured dog lying in the road that caused him to veer off and lose control. The fact that three people saw the bag of trash in the same roadway does not implicate involvement of another vehicle. Testimony that a sweeper truck a quarter-mile down the roadway dropped a similar trash bag likewise fails to establish

a sufficient causal link between the sweeper truck and Bradley's collision.[3]

Our courts have historically required strict compliance with section 38–77–170(2). *Collins v. Doe*, 352 S.C. 462, 470, 574 S.E.2d 739, 743 (2002) Where the accident involves no physical contact between the insured's vehicle and the unknown vehicle, the accident "must have been witnessed by someone other than the owner of operator of the insured vehicle" and the witness must sign an affidavit attesting to the truth of the facts of the accident contained therein. *Id.* "Under the rules of statutory interpretation, use of words such as 'shall' or 'must' indicates the legislature's intent to enact a mandatory requirement." *Id.*

A plaintiff's strict compliance with the affidavit requirement is mandatory. In *Collins*, the court held trial testimony was not the functional equivalent of an affidavit and did not satisfy the affidavit requirement. In *Shealy*, witnesses' affidavits based on third-party communication rather than on personal knowledge of how the accident occurred failed to meet the affidavit requirement. Contrastively, in *Gilliland*, the independent witness's personal observations of the accident corroborated Gilliland's own account of the facts surrounding her accident and complied with the affidavit requirement.

"For circumstantial evidence to be sufficient to warrant the finding of a fact, the circumstances must lead to the conclusion with reasonable certainty and must have sufficient probative value to constitute the basis for a legal inference, not for mere speculation." *Shealy v. Doe*, 370 S.C. 194, 205, 634 S.E.2d 45, 51 (Ct.App.2006). Bradley's affiants had no personal knowledge of the facts of the accident. Their observations before and after the accident did not establish with

---

**3.** Bradley does not argue that hitting the trash bag constituted physical contact with the unknown vehicle. However, even if the trash bag did, in fact, fall from the sweeper truck, Bradley's collision with it would not meet section 38–77–170's physical contact requirement. Our supreme court has held the physical contact requirement is not met when a plaintiff's vehicle collides with an unattached portion of an unknown vehicle. *See Wynn v. Doe*, 255 S.C. 509, 180 S.E.2d 95 (1971); *Davis v. Doe*, 285 S.C. 538, 331 S.E.2d 352 (1985).

reasonable certainty a causal connection between Bradley's injury and an unknown vehicle. The affidavits of independent witnesses must contain some independent evidence of an unknown vehicle's involvement in the accident. Bradley failed to comply with the statute's mandate.

## CONCLUSION

We rule the affidavits submitted by Bradley did not raise a genuine issue of material fact as to whether Bradley's collision resulted from involvement with an unknown vehicle. The trial court properly granted Doe's summary judgment motion.

Accordingly, the trial court's decision is

**AFFIRMED.**

KITTREDGE, J., concurs.

SHORT, J. dissents in a separate opinion.

SHORT, J. (dissenting).

I would reverse the order granting summary judgement and for that reason, I respectfully dissent. I adopt the majority's facts and standard of review, but I disagree with the analysis and would find as follows.

Section 38–77–170 of the South Carolina Code dictates the "conditions to sue or recover under uninsured motorist provision when owner or operator of motor vehicle causing injury or damage is unknown" and states:

If the owner or operator of any motor vehicle which causes bodily injury or property damage to the insured is unknown, there is no right of action or recovery under the uninsured motorist provision, unless:

(1) the insured or someone in his behalf has reported the accident to some appropriate police authority within a reasonable time, under all the circumstances, after its occurrence;

(2) the injury or damage was caused by physical contact with the unknown vehicle, or the accident must have been witnessed by someone other than the owner or operator of the insured vehicle; provided however, the witness must

sign an affidavit attesting to the truth of the facts of the accident contained in the affidavit;

(3) the insured was not negligent in failing to determine the identity of the other vehicle and the driver of the other vehicle at the time of the accident.

The record fails to include any allegation that Bradley failed to comply with the first or third elements of the above statutory requirement. However, Doe claims Bradley failed to meet either of the two possible prongs set forth 'in the statute's second requirement. I will address these requirements individually.

The first possible manner in which the second requirement could be met would be to offer proof that the unknown vehicle contacted the insured's vehicle during the accident. Bradley does not allege any contact was made with another vehicle, but he noted in his affidavit that he believed he had made contact with the garbage bag prior to veering off the road. The trial court correctly applied South Carolina case law in finding that even if this contact had occurred, it would not constitute physical contact with the unknown vehicle as required by the statute. *See Wynn v. Doe*, 255 S.C. 509, 180 S.E.2d 95 (1971) (holding a motorcyclist's contact with a very slick and dangerous chemical substance on the highway, such having been dumped or spilled there by an unknown vehicle, did not constitute physical contact with the unknown vehicle); *See also Davis v. Doe*, 285 S.C. 538, 331 S.E.2d 352 (1985) (holding a wheel bearing which had dislodged from an unknown vehicle and broken through the insured's windshield did not constitute physical contact with the unknown vehicle).

The above noted *Davis* opinion, while noting the physical contact requirement was instituted to prevent fraudulent claims, invited the legislature to change this strict physical contact requirement should they find such a change to be "advisable." 285 S.C. at 541, 331 S.E.2d at 354. Perhaps in response to this invitation, the legislature, in a 1987 amendment, added a second means by which an insured could satisfy the statutory requirements for recovery.[4] *See Wausau Un-*

---

4. A subsequent 1989 amendment to § 38–77–170, instituted the requirement to prominently display on the face of the affidavit the specific language "A FALSE STATEMENT CONCERNING THE FACTS CON-

*derwriters Insurance Company v. Howser,* 309 S.C. 269, 275, 422 S.E.2d 106, 109 (1992). This second prong (Witness Prong) requires that a witness to the accident other than the owner/operator of the insured vehicle must attest in a signed affidavit to the facts of the accident.

While it is clear an item which has fallen from an unknown vehicle and struck an insured's vehicle can not satisfy the physical contact element of the statutory requirement, I see no reason why it could not satisfy the Witness Prong. The wisdom behind not allowing the physical contact requirement to be satisfied by contact with something which has fallen off a vehicle is evident. A vehicle owner or operator who sought to defraud could easily refer to any item as having dislodged from an unknown vehicle and struck his vehicle while leaving the insurance company without a means to determine otherwise. However, I fail to see how an independent witness observing an item falling from a vehicle would not be permitted to satisfy the Witness Prong of the statutory requirement. I can discern no difference between a vehicle owner or operator who crashes in evasion of an item which has fallen off a vehicle and a vehicle owner or operator who crashes in evasion of the vehicle itself. Both situations result in an unknown vehicle causing bodily injury and/or property damage to the insured. In either instance, the same protection against fraud would apply in that a witness other than the vehicle owner or operator would have to submit an affidavit attesting to the events which caused the accident. Having established the applicability of the statute, I now seek to determine its satisfaction.

Doe urges this court to construe the statute strictly. He argues the statute's language "the accident must have been witnessed" dictates that the affidavits of only those who have seen the accident itself are permitted. I find such a strict construction of the statute would undermine the statute's purpose. In fact, our state Supreme Court has recognized ambiguities in § 38–77–170(2) and has urged a liberal con-

---

TAINED IN THIS AFFIDAVIT MAY SUBJECT THE PERSON MAKING THE FALSE STATEMENT TO CRIMINAL PENALTIES AS PROVIDED BY LAW."

struction. *Howser*, 309 S.C. at 275, 422 S.E.2d at 110; *Gilliland v. Doe*, 357 S.C. 197, 201, 592 S.E.2d 626, 628 (2004).

I believe the intent of the language "the accident must have been witnessed" is to direct that the witness must have observed the factors leading to the accident. Someone other than the owner or operator of the insured vehicle simply witnessing the accident without witnessing an unknown vehicle's contribution can not logically be interpreted as entitling the owner or operator to an uninsured motorist claim. Both this court and the South Carolina Supreme Court have addressed the witnessing requirement accordingly.

In *Shealy v. Doe*, this court found that two men who had been thrown from the back of a swerving pick-up truck were not entitled to recover under the driver's uninsured motorist policy. 370 S.C. 194, 634 S.E.2d 45 (2006). The affidavits submitted by these two men stated that the driver of the pick-up truck told them that he had swerved to avoid colliding with an unknown vehicle. *Id.* at 197, 634 S.E.2d at 46. This court held these affidavits "do not attest to facts they perceived, but merely restate the perceptions of the vehicle's operator." *Id.* at 200, 634 S.E.2d at 48. Additionally, this court stated that the affidavits were from two people who apparently did not witness the accident. *Id.* Clearly, these two men thrown from the truck witnessed the accident itself. In fact, there was no accident until they were thrown from the truck and landed on the roadway. Thus, this court was clearly construing "witnessing the accident" to mean "witnessing the events leading to the accident."

In *Gilliland v. Doe*, Gilliland, after crashing into a tree and sustaining significant injuries, alleged she was run off the road by an unknown vehicle. 357 S.C. at 198, 592 S.E.2d at 627. No one other than Gilliland witnessed the unknown vehicle. Another driver, Gayle Norris, was waiting to enter the roadway when she observed Gilliland round a curve in the road and crash. *Id.* at 198–99, 592 S.E.2d at 627. Norris never saw a second vehicle, but did observe two sets of headlights, and observed the second set of headlights "arcing through a field" as if the second vehicle was making a u-turn and leaving the accident scene. *Id.*

The *Gilliland* court entertained an analysis of whether circumstantial evidence could be used to satisfy the independent witness requirement. If Norris's witnessing the accident alone were enough, then the Court would not have performed an analysis to determine if circumstantial evidence was appropriate evidence to be used in documenting the events leading to the accident. Further, the Supreme Court agreed with this court's earlier characterization of the § 38–77–170(2) requirement. Both courts found that the independent witness must "be able to attest to the circumstances surrounding the accident, i.e. what actions of the unknown driver contributed to the accident." *Id.* at 201, 592 S.E.2d at 628 (quoting *Gilliland v. Doe,* 351 S.C. 497, 501–02, 570 S.E.2d 545, 548 (Ct.App. 2002)). The Supreme Court found this analysis "constitutes a fair interpretation of the ambiguous fact requirement of § 38–77–170(2)." *Gilliland,* 357 S.C. at 201, 592 S.E.2d at 628.

I find the critical query in these matters is not whether an independent witness has observed the actual accident itself, but rather it is whether an independent witness has observed evidence of an unknown vehicle causing bodily injury or property damage to the insured. To find otherwise could create absurd results. One could reasonably foresee an independent witness who clearly observes an unknown vehicle create a hazard but be prevented from attesting to these facts because just prior to the accident he lost sight of the vehicles as they rounded a bend in the road. In situations where an independent witness observes evidence of an unknown vehicle's contribution to the accident, I fail to see the necessity of observing the accident itself. This is especially true in light of the purpose of § 38–77–170(2). This statute was enacted to protect insured drivers from damages caused by unknown drivers while maintaining safeguards against fraudulent claims. *Gilliland,* 357 S.C. at 199, 592 S.E.2d at 627. Our Supreme Court has instructed that legislative intent must be construed only after reading each of the statutes contained in the same act together. *Burns v. State Farm Mut. Auto. Ins. Co.,* 297 S.C. 520, 522, 377 S.E.2d 569, 570 (1989). This court has noted "the uninsured motorist legislation is remedial in nature, enacted for the benefit of injured persons, and is to be liberally construed so that the purpose intended may be accomplished." *Franklin v. Devore,* 327 S.C. 418, 421, 489

S.E.2d 651, 653 (Ct.App.1997). Having established this interpretation of the witness requirement, I next endeavor to ascertain the propriety of using circumstantial evidence to establish the events leading to the accident.

While none of the affiants utilized by Bradley observed the actual accident itself, Bradley attempts to rely upon the circumstantial evidence created by their observations. As noted above, the South Carolina Supreme Court, in the *Gilliland* opinion, undertook an analysis of whether circumstantial evidence could be used to satisfy the independent witness requirement of § 38–77–170(2). The Court found "[t]he attending circumstances along with direct testimony may be taken into account by the jury in arriving at its decision as **any fact in issue may be established by circumstantial evidence,** if the circumstances, which must themselves be proven lead to the conclusion with reasonable certainty." *Gilliland,* 357 S.C. at 202, 592 S.E.2d at 629 (emphasis added) (quoting *Marks v. Indus. Life & Health Ins. Co.,* 212 S.C. 502, 505, 48 S.E.2d 445, 446 (1948)). The Court held that Norris's statements regarding seeing two sets of headlights and what appeared to be an unknown vehicle making a u-turn were supportive of Gilliland's testimony and contained circumstantial evidence which created "a question of fact as to causation for the jury." *Gilliland,* 357 S.C. at 202, 592 S.E.2d at 629. The jury's verdict in favor of Gilliland was reinstated. *Id.*

Lastly, I recognize temporal and spatial restrictions exist when seeking to utilize circumstantial evidence. One can reasonably foresee attempts to utilize circumstantial evidence which was gathered a significant amount of time or distance from the accident itself, and I note these instances must be addressed under the peculiar facts of each individual accident. In this matter, both Bosley and Bradley stated they left Waffle House shortly after 3 a.m. Bosley stated he drove approximately one-quarter of a mile, swerved to avoid a large trash bag in the road, and then observed a street sweeper truck drop a similar garbage bag onto the road about one-quarter of a mile from the first trash bag. Bradley stated he swerved to avoid the same first trash bag Bosley had seen and crashed his vehicle only minutes after Bosley had left the Waffle House. Shortly after the accident, at approximately 3:15 a.m., Lieutenant Colonel Douglas also observed the large

trash bag in the road when he stopped to assist Bradley. All of these events took place over a maximum time period of less than fifteen minutes and the second trash bag was dropped approximately one-quarter of a mile from the accident. I find this evidence falls within temporal and spatial requirements.

The closeness in time between Bosley's and Douglas's observations of the trash bag on the road and the time of Bradley's accident, and the closeness in time and proximity between the accident and Bosley's observation of the street sweeper truck dropping a similar trash bag onto the roadway are relevant. These circumstances elevate the notion of an unknown driver contributing to Bradley's accident from mere speculation to plausible circumstantial evidence. Accordingly, I find this circumstantial evidence is sufficient to create a question of fact for the jury as to the issue of causation. Viewing the evidence and all reasonable inferences that may be drawn from such evidence in the light most favorable to Bradley, I find sufficient circumstantial evidence exists to warrant a trial in this matter.