776 S.E.2d 121

Bobby Lee TUCKER, Sr., Respondent,

v.

John DOE, individually, and d/b/a Doe
Trucking Company, Appellant.

Appellate Case No. 2014–000134.

No. 5338.

Court of Appeals of South Carolina.

Heard June 3, 2015.

Decided Aug. 5, 2015.

Rehearing Denied Nov. 19, 2015.

C. Mitchell Brown, William C. Wood, Jr., Michael J. Anzelmo, and Graham Ross Billings, all of Nelson Mullins Riley & Scarborough, LLP, of Columbia; and Thomas J. Keaveny II, of Charleston, for appellant.

Robert Norris Hill, of Law Office of Robert Hill, of Lexington, and William P. Hatfield, of Hatfield Temple, LLP, of Florence, for respondent.

THOMAS, J.

John Doe, individually, and d/b/a Doe Trucking Company (collectively referred to as Doe), argues the circuit court erred in denying Doe's motions for directed verdict and judgment notwithstanding the verdict (JNOV) because (1) the sworn

witness affidavit⁰ of Anthony Bernardo failed to satisfy the requirements of section 38–77–170(2) of the South Carolina Code (2015), (2) Respondent Bobby Lee Tucker, Sr. failed to present sufficient evidence to create a question of fact about whether an unknown vehicle proximately caused his accident by leaving an object in the road, and (3) the evidence of recklessness was insufficient to sustain an award of punitive damages. We affirm.

## FACTS/PROCEDURAL HISTORY

On April 30, 2010, at approximately 12:15 a.m., Tucker lost control of the tractor-trailer he was driving southbound on Interstate 95 (I–95) and struck a concrete column in the median of the highway. Tucker, a part-time truck driver, had been driving from Darlington, South Carolina, to deliver cars to Jacksonville, Florida. He testified he was driving in the right lane on cruise control at about sixty-eight miles per hour when the car in front of him braked and switched lanes. Because Tucker could not see what was ahead, he decided to follow the car and switch lanes; however, a passing car in the left lane prevented him from being able to switch. At that point, Tucker observed an object "that looked just like a cardboard box" lying in the right lane, approximately two feet from the center line. He was unable to avoid the object and the truck's left front rim struck it, causing him to lose control of the truck, which collided with a concrete column in the median of the road supporting an overpass.

According to Tucker, two men from New York stopped to assist him. One of those men was Bernardo, who submitted an affidavit (the Affidavit) attesting to the following, in pertinent part:

2. On Friday, April 30, 2010[,] I was traveling to Florida with Dan Valenza in my 1998 Dodge Durango automobile.

3. I was traveling in the outside southbound lane of Interstate 95 in Florence County, South Carolina, following a truck pulling a car carrier at a distance of approximately 150 feet.

4. As I approached exit 153, the truck and car carrier suddenly veered to the left as if to avoid something in

the roadway and in doing so struck a cement pillar supporting the overpass.

5. I pulled over into the inside lane and turned around in the median so my vehicle's headlights would illuminate the accident scene.

6. When I reached the cab of the truck it was wrapped around the column and the driver, an elderly white male, who I later learned was Bobby Lee Tucker, Sr., stated that something was in the road. He remained conscious until EMS arrived on scene.

7. When I looked at the truck cab it was raised up as if it was on top of something.

A paramedic, Billie Collins, assessed Tucker, who was stuck inside the crushed cab of the truck, and treated his injuries. Collins spoke to the two men who had stopped to help Tucker. They "didn't know exactly what had taken place but they saw the accident occur." According to Collins, Tucker claimed "[h]e swerved to miss something that was on I–95 and hit the support [column]."

A highway patrolman, Bradley Suggs, arrived at the accident scene at 12:52 a.m. Suggs testified he did not notice any objects in the road at the crash site, and he was unaware at the time that Tucker had struck an object in the road. Later, Suggs was informed that another witness found an object near the crash site.

Albert Vereen arrived between 4:00 a.m. and 4:30 a.m. to tow the wrecked tractor-trailer. Vereen testified he "walked back down the roadway and noticed the skidmarks in the road, some seventy-five to a hundred feet back, and the skidmarks went kinda from the inside lane into an angle almost to the column, and then ten or fifteen feet to the right is when we noticed the block of metal." The block, which Vereen estimated was "five or six hundred pounds," was too heavy for two men to lift and had to be loaded into Vereen's trailer using a front-end loader. Vereen testified he had no doubt the crash resulted from Tucker striking the block and consequently losing control of his truck. At trial, Tucker identified the block as the object he hit and testified he had no doubt his truck struck the block.

During the trial, Tucker's expert, Roger Harris, identified the block as a steel bearing block, approximately eighteen inches square, eleven inches tall, and estimated to weigh 650 pounds. Harris, an expert in machine design, material science, metallurgy, and fracture analysis, also testified that marks in the road at the crash site were "consistent with something like [the bearing block] making contact and making that mark on the concrete." He further explained the scrape marks on the bearing block were consistent with sliding down concrete. According to Harris, the damage on the inside rim of Tucker's left front tire was consistent with striking the block. Harris also stated that, in his estimation, the bearing block could have traveled "tens of feet" had it been struck by Tucker's tractor-trailer traveling at a speed of approximately seventy miles per hour.

Earlier that same night between 10:00 p.m. and 11:00 p.m., truck driver Donald Wilson noticed a blue freightliner truck at a truck stop at the junction of Highway 52 and I–95. Wilson also observed the freightliner turn onto I–95 South. The truck caught Wilson's attention because he had previously driven a blue freightliner. The freightliner's flatbed was loaded with pipes, rebar, and an object that "looked just like" the bearing block that was located near the crash site.

Wilson explained that the block was secured in the flatbed by a yellow nylon strap but did not have a chain going through the middle of the block, which he recognized "could be a problem." He also stated "you've got a lot of them out there running them flatbeds, and if you stop in time, man, the stuff will come off of them.... Because if that metal ever starts sliding, you're in trouble." Harris testified without objection that a single nylon strap running across the top of the bearing block would not be adequate to secure the block in the flatbed. He explained the block would easily overcome the strap as the truck accelerated to interstate speeds, and he stated maneuvering turns in the road would cause the object to move in the flatbed.

According to Gilbert George, a District Maintenance Engineer with the South Carolina Department of Transportation (SCDOT), it is not unusual for objects to fall off a flatbed truck. George also examined a picture of a mark in the road

at the crash scene and testified the bearing block could have made the mark had it fallen from a flatbed. He further testified that, because the object weighed 650 pounds and was located in an area where pedestrian traffic is not permitted, he could only assume this object came to be on I–95 South by way of a vehicle.

Tucker filed this "John Doe" action on May 14, 2010, seeking actual damages, punitive damages, and costs from the operator of the unknown vehicle that allegedly carried the bearing block. Tucker's uninsured motorist insurance carriers answered the complaint on behalf of Doe.

On July 14, 2010, Tucker filed Bernardo's affidavit pursuant to the witness affidavit requirement of section 38–77–170(2) of the South Carolina Code (2015) for an accident caused by an unknown vehicle without physical contact. Because that affidavit did not include statutorily required language, on March 3, 2011, Tucker served a second affidavit that included the statutory language.[1]

The trial in this action began on April 15, 2013. Bernardo did not testify at trial, and no witness aside from Tucker testified to observing the accident. At the close of Tucker's case, Doe moved for a directed verdict based on Tucker's failure to (1) satisfy the affidavit requirements of section 38–77–170(2), (2) satisfy the plaintiff's burden of proof for negligence, and (3) present sufficient evidence such that the jury could consider punitive damages. Doe also moved for a directed verdict based on the defense of comparative negligence. The circuit court denied these motions at this point in the trial and again at the close of all of the evidence.

---

1. During oral argument, Doe took issue with the fact that Bernardo's second affidavit indicated Tucker's truck veered to the left, while Bernardo's first affidavit stated the truck veered to the right. This point was never raised or ruled upon in the circuit court and Doe never addressed this issue in his appellate briefs. Thus, this issue is not preserved for appellate review. *See Wilder Corp. v. Wilke,* 330 S.C. 71, 76, 497 S.E.2d 731, 733 (1998) ("It is axiomatic that an issue cannot be raised for the first time on appeal, but must have been raised to and ruled upon by the trial judge to be preserved for appellate review."); *Bochette v. Bochette,* 300 S.C. 109, 112, 386 S.E.2d 475, 477 (Ct.App. 1989) (noting an appellant may not use oral argument as a vehicle to argue issues not argued in the appellant's brief).

The jury returned a verdict in favor of Tucker and awarded him $2.5 million in actual damages and $2.5 million in punitive damages. Doe filed post-trial motions for JNOV, new trial absolute, and new trial *nisi* remittitur, and on December 16, 2013, the circuit court remitted the punitive damages award to $500,000 and denied the remaining motions. This appeal followed.

## ISSUES ON APPEAL

I.   Did the circuit court err in denying Doe's motions for directed verdict and JNOV because Bernardo's sworn witness affidavit failed to satisfy the requirements of section 38–77–170(2) of the South Carolina Code (2015)?

II.  Did the circuit court err in denying Doe's motions for directed verdict and JNOV because Tucker failed to present sufficient evidence to create a question of fact about whether an unknown vehicle proximately caused his accident by leaving an object in the road?

III. Did the circuit court err in denying Doe's JNOV motion as to punitive damages because the evidence of reckless-ness was insufficient?

## STANDARD OF REVIEW

"When reviewing the denial of a motion for directed verdict or JNOV, this Court must employ the same standard as the trial court by viewing the evidence and all reasonable infer-ences in the light most favorable to the nonmoving party." *Welch v. Epstein,* 342 S.C. 279, 299, 536 S.E.2d 408, 418 (Ct.App.2000). "The trial court must deny the motions when the evidence yields more than one inference or its inference is in doubt." *Id.* at 300, 536 S.E.2d at 418. "This Court will reverse the trial court only when there is no evidence to support the ruling below." *Id.* "When considering directed verdict and JNOV motions, neither the trial court nor the appellate court has authority to decide credibility issues or to resolve conflicts in the testimony or evidence." *Id.* at 300, 536 S.E.2d at 419.

## LAW/ANALYSIS

### I.  Witness Affidavit Requirement of Section 38–77–170(2)

■ Doe contends Bernardo's sworn witness affidavit did not satisfy section 38–77–170(2) of the South Carolina Code

(2015) because it failed to suggest the driver of the unknown vehicle proximately caused the accident and the affiant did not swear to the existence of an object in the roadway. We disagree.

■ We find the Affidavit satisfied the requirements of section 38–77–170(2), which states in relevant part:

> If the owner or operator of any motor vehicle which causes bodily injury or property damage to the insured is unknown, there is no right of action or recovery under the uninsured motorist provision, unless . . .

> the injury or damage was caused by physical contact with the unknown vehicle, or the accident must have been witnessed by someone other than the owner or operator of the insured vehicle; provided however, the witness must sign an affidavit attesting to the truth of the facts of the accident contained in the affidavit. . . .

"Section 38–77–170(2) is clear on its face." *Bradley v. Doe,* 374 S.C. 622, 629, 649 S.E.2d 153, 157 (Ct.App.2007). "It expressly requires that someone other than the owner or operator of the insured vehicle witness the accident." *Id.* "The plain language of § 38–77–170(2) requires that where the accident involves no physical contact between the insured's vehicle and the unidentified vehicle, the accident must have been witnessed by someone other than the owner or operator of the insured vehicle and the witness must sign an affidavit attesting to the truth of the facts of the accident contained therein." *Id.* (internal quotation marks omitted).

In *Gilliland v. Doe,* our supreme court provided a historical review of the unknown driver statute:

> The Legislature first enacted a "John Doe" statute in 1963, recognizing an insured's right to receive uninsured motorist coverage for injuries caused by unknown drivers. Since the statute's enactment, the Legislature placed safeguards within the statute to prevent citizens from bringing fraudulent "John Doe" actions. The initial safeguard was a requirement that the unknown vehicle make "physical contact" with the plaintiff's car. Act No. 312, 1963 S.C. Acts 535.

> Then in 1987, the Legislature amended the statute once again to allow insureds to bring a "John Doe" action regard-

less of physical contact as long as an independent person witnessed the accident. Act. No. 166, 1987 S.C. Acts 1122.

357 S.C. 197, 199–200, 592 S.E.2d 626, 627 (2004). Our supreme court further stated in *Collins v. Doe:*

> The legislature again amended the statute in 1989, and added the sworn affidavit requirement. The statute at large effecting this most recent amendment provides that the act is "to amend section 38–77–170 relating to the requirements to recover under the uninsured motorist provisions when the at-fault party is unknown, so as to require a witness to the accident to sign an affidavit attesting to the truth of the facts about the accident and to provide a warning statement to be displayed on the affidavit." Act No. 148, 1989 S.C. Acts 439. . . .

352 S.C. 462, 466, 574 S.E.2d 739, 741 (2002) (emphasis omitted).

In *Gilliland,* our supreme court determined to what extent an independent witness must testify about the causal connection between the unknown vehicle and the accident to satisfy the legislature's intent to protect insurance companies from fraudulent claims in "John Doe" actions. 357 S.C. at 200, 592 S.E.2d at 628. The court held the witness "must be able to attest to the circumstances surrounding the accident, i.e., what actions of the unknown driver contributed to the accident." *Id.* at 201, 592 S.E.2d at 628 (internal quotation marks omitted).

Applying the analysis in *Gilliland,* we hold the Affidavit complied with section 38–77–170(2). In *Gilliland,* the petitioner was leaving a grocery store when two men waved at her from a pick-up truck. *Id.* at 198, 592 S.E.2d at 627. As she drove from the store, the men began to pursue her vehicle and "rode her bumper" for a two-mile stretch. *Id.* The petitioner sped up in a frightened attempt to get away from the truck, and as she accelerated she lost control of her car, ran off the road, and hit a tree. *Id.* She testified the truck never made contact with her car and the men "backed off" once she began to lose control. *Id.*

During the accident, a witness was stopped at a nearby intersection. *Id.* The witness testified she saw the lights of

two cars as the cars came around a curve.[2] *Id.* at 198–99, 592 S.E.2d at 627. She also testified that after the accident, she saw the lights of the car behind the petitioner's "arc through a field" as if it were making a U-turn. *Id.* at 199, 592 S.E.2d at 627. This court described the witness's testimony regarding the accident as:

> [The witness] testified that Gilliland's car "came around the curve and come [sic] almost completely around the curve and then it just kind of went straight into a tree and a ditch." [The witness] also testified she saw the headlights of another vehicle shining on Gilliland's bumper just before Gilliland ran off the road.

*Gilliland v. Doe*, 351 S.C. 497, 499, 570 S.E.2d 545, 546–47 (Ct.App.2002) (second alteration by court), *rev'd*, 357 S.C. 197, 592 S.E.2d 626 (2004).

This court held the witness's testimony was insufficient to meet the affidavit requirements of section 38–77–170(2). *Id.* at 502, 570 S.E.2d at 548. Our supreme court reversed, holding the testimony of this witness provided circumstantial evidence that supported the petitioner's testimony that an unknown driver contributed to her accident and therefore satisfied section 38–77–170(2). *Gilliland*, 357 S.C. at 202, 592 S.E.2d at 629.

Here, Bernardo attested to the following in the Affidavit, in pertinent part:

3.  I was traveling in the outside southbound lane of Interstate 95 in Florence County, South Carolina, following a truck pulling a car carrier at a distance of approximately 150 feet.

4.  As I approached exit 153, the truck and car carrier suddenly veered to the left as if to avoid something in

---

2. Our supreme court noted the issue in *Gilliland* concerned whether the witness's testimony met the requirements of section 38–77–170(2). 357 S.C. at 201, 592 S.E.2d at 628. Throughout the opinion, the court referred to the witness's "testimony." Pursuant to our supreme court's decision in *Collins v. Doe*, a plaintiff cannot substitute trial testimony for the statutory affidavit requirement. 352 S.C. at 471, 574 S.E.2d at 743. Given that our supreme court in *Gilliland* acknowledged that holding in *Collins*, we find the relevant witness observations discussed in *Gilliland* must have been included in the witness's affidavit.

the roadway and in doing so struck a cement pillar supporting the overpass.

Bernardo witnessed the accident here in a manner similar to the witness in *Gilliland*. The witness in *Gilliland* offered no explanation as to if or how an unknown driver caused the accident. *Id.* at 198–99, 592 S.E.2d at 627. Instead, the witness merely described observing headlights of two cars as the cars came around a curve, and after the accident, the witness saw the lights of the car behind Gilliland's "arc through a field" as if it were making a U-turn. *Id.* Here, Bernardo described how Tucker "suddenly veered to the left as if to avoid something in the roadway and in doing so struck a cement pillar supporting the overpass." While this statement did not provide direct evidence as to the involvement of an unknown driver, it amounted to sufficient circumstantial evidence that supported Tucker's testimony and the other evidence in the record suggesting an unknown driver contributed to the accident. *See id.* at 202, 592 S.E.2d at 629 ( "[T]he [witness's] testimony ... contained circumstantial evidence that supports Petitioner's testimony that an unknown driver contributed to her accident."); *id.* ("[The witness's] testimony that she saw the lights of an unknown car that was turning around and fleeing the scene of the accident sufficiently corroborates Petitioner's testimony creating a question of fact as to causation for the jury.... *We believe that the record includes sufficient circumstantial evidence* for the jury to find the requisite causation necessary to satisfy § 38–77–170(2)." (emphasis added)); *id.* ("[T]he attending circumstances along with direct testimony may be taken into account by the jury in arriving at its decision as any fact in issue may be established by circumstantial evidence, if the circumstances, which must themselves be proven lead to the conclusion with reasonable certainty." (internal quotation marks omitted)); *id.* at 199, 592 S.E.2d at 627 (stating the issue in *Gilliland* was whether the witness's testimony met the requirements of section 38–77–170(2)).

At oral argument, Doe essentially contended the Affidavit itself must fully explain the unknown vehicle's involvement in the accident. This argument attempts to impose requirements beyond the plain language of section 38–77–170(2). The Affidavit satisfies the requirement that the accident be "witnessed

by someone other than the owner or operator of the insured vehicle" who "sign[ed] an affidavit attesting to the truth of the facts of the accident contained in the affidavit." § 38–77–170(2); *see also Ferguson Fire & Fabrication, Inc. v. Preferred Fire Prot., L.L.C.,* 409 S.C. 331, 339, 762 S.E.2d 561, 565 (2014) (reversing this court for reading requirements into a statute that were not present in the text of the statute itself). Furthermore, as explained above, this argument does not comport with our supreme court's holding in *Gilliland.*

Doe asserts that under *Bradley v. Doe,* 374 S.C. 622, 649 S.E.2d 153 (Ct.App.2007), the Affidavit is deficient. In that case, Bradley swerved to avoid an object in the road, lost control of his vehicle, veered off the road, and struck a tree. *Id.* at 624, 649 S.E.2d at 154. About fifteen minutes later, a witness drove past Bradley, turned his vehicle around, and headed toward the accident scene. *Id.* The witness observed a "large white garbage can bag" in the lane in which Bradley had previously been traveling. *Id.* While helping Bradley, the witness saw another passing vehicle strike and drag the garbage bag down the road. *Id.* at 624, 649 S.E.2d at 155. Bradley's son and daughter subsequently arrived and noted the trash bag and trash scattered on the roadway. *Id.* Another witness who drove home minutes before Bradley stated he saw a large trash bag in the middle of the road. *Id.* That witness claimed he narrowly avoided the bag and continued driving about another quarter-mile when he encountered a "white street sweeper's truck," which "drop[ped] another similar trash bag onto the public roadway." *Id.*

This court held none of the above-mentioned witnesses could satisfy the affidavit requirement of section 38–77–170(2) because "none of the affiants actually saw Bradley swerve to avoid a trash bag in the road and collide with the tree." *Id.* at 633, 649 S.E.2d at 159. None of Bradley's affiants had personal knowledge of the facts of the accident, and their observations before and after the accident did not establish with reasonable certainty a causal connection between Bradley's injury and an unknown vehicle. *Id.* at 634–35, 649 S.E.2d at 160. The court noted "[a] plaintiff's strict compliance with the affidavit requirement is mandatory." *Id.* at 634, 649 S.E.2d at 160. Ultimately, the court concluded "the affidavits of independent witnesses must contain some independent evi-

dence of an unknown vehicle's involvement in the accident. Bradley failed to comply with the statute's mandate." *Id.* at 635, 649 S.E.2d at 160.

We find *Bradley* distinguishable from the present case because Bernardo, unlike any of the affiants in *Bradley*, actually witnessed the accident. Bernardo observed Tucker swerving as if to avoid an object in the roadway and then colliding with the concrete column. This satisfies the affidavit requirement of section 38–77–170(2). Additionally, because the Affidavit is based upon Bernardo's personal knowledge, this case is distinguishable from *Shealy v. Doe,* 370 S.C. 194, 200, 634 S.E.2d 45, 48 (Ct.App.2006), in which this court held two affidavits failed to satisfy section 38–77–170(2) because the affiants did not attest to facts they perceived but merely restated the perceptions of the vehicle's operator.

Doe points to the language in *Bradley* that "affidavits of independent witnesses must contain some independent evidence of an unknown vehicle's involvement in the accident." 374 S.C. at 635, 649 S.E.2d at 160. Here, Bernardo observed Tucker "[veer] to the left as if to avoid something in the roadway," but Bernardo did not swear to the actual existence of an object in the roadway or attest to the manner in which such an object arrived in the roadway. In certain instances, such as *Bradley* and the case at hand, a witness could not observe the object falling from the unknown vehicle because the object fell at some time prior to the accident. In such cases, if it was required that a witness affidavit describe both (1) the accident and (2) the manner in which the object in the road came from the unknown vehicle, a plaintiff would effectively be barred from recovery when the unknown vehicle exits the scene before the fallen object causes the accident. This court could have taken such a position in *Bradley* but did not and instead focused on the fact the witnesses did not observe the swerving and the collision. *Id.* at 633, 649 S.E.2d at 159.

In *Wausau Underwriters Insurance Co. v. Howser,* 309 S.C. 269, 275, 422 S.E.2d 106, 109–10 (1992), our supreme court indicated section 38–77–170(2) required an independent witness to attest to facts that provide at least some causal connection between an unknown driver and the accident.

"The Court [in *Howser*] provided that the adequacy of the 'causal connection' should pass the same test used in determining whether an injury or damage arose out of the ownership, maintenance, or use of the uninsured vehicle." *Gilliland*, 357 S.C. at 200, 592 S.E.2d at 628. "The Court explained that this test regarding the sufficiency of the evidence is 'something less than proximate cause and something more than the vehicle being the mere site of the injury.'" *Id.* at 201, 592 S.E.2d at 628 (quoting *Howser*, 309 S.C. at 272, 422 S.E.2d at 108). "Based on the test set forth in *Howser*, § 38–77–170(2) may be satisfied even though an independent witness fails to provide a clear answer to the question of proximate cause." *Id.* Hence, the Affidavit satisfied section 38–77–170(2) even though it did not, by itself, provide a clear answer to the question of proximate cause.

■ Doe next contends section 38–77–170(2) required Bernardo to testify at trial. This issue is not preserved for appellate review. At trial, Doe admitted "[Tucker] did not depose [Bernardo] but I understand he is not required to. Under the statute he has to submit an affidavit, and we have challenged the sufficiency of the affidavit." Thus, Doe conceded Tucker was not required to do anything more than submit an affidavit to satisfy section 38–77–170(2). *See City of Greer v. Humble*, 402 S.C. 609, 614, 742 S.E.2d 15, 18 (Ct.App. 2013) (stating an issue conceded in the trial court cannot be argued on appeal). Nowhere at trial did Doe contest Tucker's failure to call Bernardo as a witness. In his post-trial motions memorandum, Doe mentioned that "Plaintiff produced no witnesses who saw any object in the road let alone any witness who observed Plaintiff striking any object in the road." However, this statement pertained to Doe's argument that the evidence of negligence was insufficient, not that Bernardo was required to testify under section 38–77–170(2). Only on appeal has Doe advanced that position; accordingly, this issue is not preserved for review. *See Wilder Corp. v. Wilke*, 330 S.C. 71, 76, 497 S.E.2d 731, 733 (1998) ("It is axiomatic that an issue cannot be raised for the first time on appeal, but must have been raised to and ruled upon by the trial judge to be preserved for appellate review.").

■ Doe further asserts the revised Affidavit, which was submitted nearly ten months after the commencement of the suit, was untimely. We find this argument is not preserved for review because it was never raised to or ruled upon by the circuit court. *See id.* ("It is axiomatic that an issue cannot be raised for the first time on appeal, but must have been raised to and ruled upon by the trial judge to be preserved for appellate review.").

## II.  Sufficiency of the Evidence

■ Doe further asserts Tucker failed to present sufficient evidence to create a question of fact about whether an unknown vehicle proximately caused his accident by leaving an object in the road.  We disagree.

On the same evening as Tucker's accident, Wilson observed a blue freightliner truck at a truck stop at the junction of Highway 52 and I–95, and he witnessed the freightliner turn onto I–95 South.  On the freightliner's flatbed was a block that "looked just like" the bearing block that Tucker testified he hit while driving down I–95 South.  A tow truck operator located the block near the crash scene.  Wilson explained the block he observed in the flatbed had a yellow nylon strap across it but did not have a chain going through the middle of the block.  He recognized at the time this "could be a problem," and he explained objects can slide off flatbed trucks due to deceleration.

■ Harris testified as an expert in machine design, material science, metallurgy, and fracture analysis.  Harris testified without objection that a single nylon strap running across the top of the bearing block would not be adequate to secure the block in the flatbed.  He explained the block would easily overcome the strap as the truck accelerated to interstate speeds, and he stated maneuvering turns in the road would cause the object to move in the flatbed.  Doe never argued at trial that Harris's testimony on this topic was improperly based on hypotheticals. *See Cantrell v. Carruth,* 250 S.C. 415, 421, 158 S.E.2d 208, 211 (1967) (noting testimony received without objection becomes competent and its sufficiency is for the jury); *Holroyd v. Requa,* 361 S.C. 43, 60, 603 S.E.2d 417, 426 (Ct.App.2004) ("Failure to object to the intro-

duction of evidence at the time the evidence is offered constitutes a waiver of the right to have the issue considered on appeal."); *Hanna v. Palmetto Homes, Inc.,* 300 S.C. 535, 536–37, 389 S.E.2d 164, 165 (Ct.App.1990) (holding even if the basis of the opinion is incomplete, a jury can rely on a witness's opinion that is admitted without objection). Likewise, Doe's argument that Harris's expert testimony was not probative is not preserved for review because Doe never made that contention at trial. *See Holroyd,* 361 S.C. at 60, 603 S.E.2d at 426 ("Failure to object to the introduction of evidence at the time the evidence is offered constitutes a waiver of the right to have the issue considered on appeal.").

Gilbert George, a District Maintenance Engineer with SCDOT, admitted on cross-examination it is not unusual for objects to fall off a flatbed truck. He also examined a picture of a mark in the road at the crash scene and testified the bearing block could have made the mark if it fell from a flatbed. He further testified that, because the bearing block weighed 650 pounds and was located in an area where pedestrian traffic is not permitted, he could only assume the block came to be on I–95 South by way of a vehicle.

Viewing the evidence in the light most favorable to Tucker, we find he presented sufficient evidence to deny the motions for directed verdict and JNOV. *See Welch,* 342 S.C. at 299, 536 S.E.2d at 418 ("When reviewing the denial of a motion for directed verdict or JNOV, this Court must employ the same standard as the trial court by viewing the evidence and all reasonable inferences in the light most favorable to the nonmoving party."); *id.* at 300, 536 S.E.2d at 418 ("The trial court must deny the motions when the evidence yields more than one inference or its inference is in doubt."); *id.* ("This Court will reverse the trial court only when there is no evidence to support the ruling below."); *id.* at 300, 536 S.E.2d at 419 ("When considering directed verdict and JNOV motions, neither the trial court nor the appellate court has authority to decide credibility issues or to resolve conflicts in the testimony or evidence.").

■ Doe correctly asserts South Carolina does not recognize res ipsa loquitur. *See Watson v. Ford Motor Co.,* 389 S.C. 434, 453 n. 7, 699 S.E.2d 169, 179 n. 7 (2010) (*"Res ipsa*

*loquitur* is a rebuttable presumption that the defendant was negligent where an accident is one which ordinarily does not occur in the absence of negligence."); *Snow v. City of Columbia*, 305 S.C. 544, 555 n. 7, 409 S.E.2d 797, 803 n. 7 (Ct.App. 1991) (noting that because South Carolina does not recognize *res ipsa loquitur*, a plaintiff is required to prove affirmatively each element of his cause of action). However, Tucker did not rely on res ipsa loquitur to prove Doe was negligent, and he put forth circumstantial evidence the bearing block caused his accident because it was inadequately strapped in the flatbed of the blue freightliner and consequently fell into the road. *See Chakrabarti v. City of Orangeburg*, 403 S.C. 308, 314, 743 S.E.2d 109, 112 (Ct.App.2013) ("A plaintiff must prove three elements to recover on a claim for negligence: (1) a duty of care owed by the defendant to the plaintiff; (2) a breach of that duty by a negligent act or omission; and (3) damage proximately resulting from the breach.").

Doe alleges this case is analogous to *Tuttle v. Allstate Insurance Co.*, in which the Washington Court of Appeals concluded the trial court properly granted Allstate summary judgment because Tuttle offered no evidence her collision with a wheel and tire was an accident caused by a phantom vehicle. 134 Wash.App. 120, 138 P.3d 1107, 1113 (2006). However, in *Tuttle*, no witness could attribute the tire in the roadway to a particular vehicle or explain how the tire might have come from a vehicle, and therefore, Tuttle provided no evidence to support an inference a driver negligently caused the wheel and tire to be in the road. *Id.* at 1111–12. In contrast, Tucker presented evidence the bearing block caused his accident after it was inadequately secured in the bed of a blue freightliner and consequently fell into the road. Hence, *Tuttle* is distinguishable from the present case.

In his brief, Doe contends the facts of *Bradley* are analogous to the case at hand and establish Tucker failed to present sufficient evidence to create a question of fact for the jury. However, the only issue in *Bradley* was whether the petitioner's affidavits complied with section 38–77–170(2). *See Bradley*, 374 S.C. at 633, 649 S.E.2d at 159 ("The sole issue for consideration in the case *sub judice* is whether the circumstantial evidence provided by Bradley's affiants complies with the statutory mandate in section 38–77–170(2)."). Furthermore,

as previously discussed, we find this case distinguishable from the facts of *Bradley*. Therefore, the circuit court did not err in denying Doe's motions for directed verdict and JNOV based on the sufficiency of the evidence.

## III Punitive Damages

Doe argues punitive damages should not have been submitted to the jury because Tucker presented no evidence Doe acted recklessly, willfully, or wantonly. Doe acknowledges that a violation of a statute constitutes evidence of recklessness or willfulness under South Carolina law; however, Doe contends that principle of law should not apply when a statute is a strict liability law and may be violated regardless of the intent of the defendant. Doe maintains the submission of punitive damages to the jury for a violation of a strict liability statute with no other evidence of recklessness is contrary to the purpose behind punitive damages. We find Doe did not preserve this argument for appeal.

At the close of Tucker's case, Doe motioned for a directed verdict on the ground that "there is no clear and convincing evidence ... of any recklessness, willfulness, [or] wantonness." The circuit court denied that motion on the basis that evidence Doe violated section 56–5–4100 of the South Carolina Code constituted evidence of recklessness. *See* S.C.Code Ann. § 56–5–4100(A) (2006) (prohibiting the driving or moving of a vehicle on a public highway "unless the vehicle is so constructed or loaded as to prevent any of its load from dropping, sifting, leaking, or otherwise escaping from the vehicle"). Doe never asserted the violation of section 56–5–4100 should not be evidence of recklessness because that statute is a strict liability statute. *See Wilder Corp.*, 330 S.C. at 76, 497 S.E.2d at 733 ("It is axiomatic that an issue cannot be raised for the first time on appeal, but must have been raised to and ruled upon by the trial judge to be preserved for appellate review."). Before charging the jury, the circuit court specifically asked the parties if they agreed with language in the charge that the violation of a statute "may be considered as evidence in deciding if the Defendant was reckless, [willful], or wanton in consideration of punitive damages." Doe informed the court he had no objection to that language. The circuit court later charged the jury on punitive damages without objection from either party. *See Vaughn v. City of Anderson*, 300 S.C. 55,

60, 386 S.E.2d 297, 300 (Ct.App.1989) ("Failure to object to the charge at trial waives any alleged error in the charge."). In his "Post–Judgment Punitive Damage Review Memorandum," Doe cited *Wise v. Broadway* for the proposition that "[v]iolation of a statute does not constitute recklessness, willfulness, and wantonness *per se, but is some evidence that the defendant acted recklessly, willfully, and wantonly.*" 315 S.C. 273, 276, 433 S.E.2d 857, 859 (1993) (emphasis added). Doe now urges this court to depart from a legal principle he himself cited and never contested at trial. *See Humble,* 402 S.C. at 614, 742 S.E.2d at 18 (stating an issue conceded in the trial court cannot be argued on appeal); *Gurganious v. City of Beaufort,* 317 S.C. 481, 488, 454 S.E.2d 912, 916 (Ct.App.1995) (holding a party may not present one ground at trial and then change his theory on appeal; the same ground argued on appeal must have been argued at trial).

■ Doe contends it would have been futile to argue against precedent to the circuit court because the circuit court is required to charge South Carolina law in its current form. Therefore, he maintains he was not required to raise his argument on punitive damages to the circuit court. *See Fettler v. Gentner,* 396 S.C. 461, 469, 722 S.E.2d 26, 31 (Ct.App.2012) (noting appellate courts do not require parties to engage in futile actions in order to preserve issues for appellate review). However, he has provided no authority for the proposition that an argument against precedent is preserved for appellate review when the argument was never raised at trial and the precedent was conceded. Instead, "an issue cannot be raised for the first time on appeal, but must have been raised to and ruled upon by the trial judge to be preserved for appellate review." *S.C. Dep't of Transp. v. First Carolina Corp. of S.C.,* 372 S.C. 295, 301, 641 S.E.2d 903, 907 (2007) (internal quotation marks omitted). As such, Doe's argument on punitive damages is not preserved for appeal.

## CONCLUSION

For all of the foregoing reasons, the decision of the circuit court is

**AFFIRMED.**

KONDUROS and GEATHERS, JJ., concur.