JUSTICE HEARN :
**514 We accepted two certified questions from the United States District Court for the District of South Carolina arising from a dispute over uninsured motorist (UM) coverage: first, whether a police officer who conducts an investigation of an accident qualifies as a "witness" under Section 38-77-170 of the South Carolina Code, and second, whether injuries suffered during a drive-by shooting "arise out of" the operation of the vehicle for insurance purposes. Because we answer the first question, "No," we decline to reach the second question.
FACTUAL BACKGROUND
At approximately 3:30 a.m. on January 3, 2016, law enforcement responded to a 911 call about an apparent motorcycle accident in Richland County. Arriving at the scene, officers found Adrian Silva and his motorcycle in a roadside ditch; police then determined Silva *755 had been shot to death, finding five gunshot wounds on the left side of his body. In the course of their investigation, officers recovered three gun shell casings near the motorcycle and reviewed surveillance video from a nearby church. The video revealed an unknown vehicle following Silva ninety seconds prior to the 911 call. Although **515 police were unable to locate anyone who observed the shooting, investigators believed an individual inside the vehicle shot Silva and then fled the scene.
Thereafter, Silva's wife sought to recover UM benefits, and in an effort to comply with section 38-77-170,[1] attached an affidavit from Richland County Sheriff's Department Investigator Joe Clarke who opined an individual from the unknown vehicle killed Silva in a drive-by shooting. Clarke noted the pattern of Silva's injuries-notably, all five gunshots struck Silva's left side-indicated the assailant drove alongside him and opened fire. Additionally, investigators were only able to find three shell casings, suggesting the two remaining casings may have ejected into the vehicle.
Allstate declined to pay the claim, arguing further investigation was necessary.[2] Wife then filed a "John Doe" wrongful death action. After Allstate failed to provide benefits, Wife filed a declaratory judgment action in federal court seeking $75,000 each in bodily injury and property damage coverage, as well as damages for acting in bad faith. Allstate moved for summary judgment, asserting two grounds for denying coverage: (1) Clarke's affidavit did not satisfy section 38-77-170's witness requirement because Clarke did not personally observe the accident, and (2) Silva's injuries did not "aris[e] out of the ownership, maintenance, or use of [a] motor vehicle...." S.C. Code Ann. § 38-77-140 (2015). In response, Wife moved for partial summary judgment and alternatively, sought certification of both issues to this Court.
**516 CERTIFIED QUESTIONS PRESENTED
1. Can a law enforcement officer who conducts an official investigation of an accident that was not contemporaneously observed by any identified, surviving person be a "witness" under South Carolina Code § 38-77-170 ?
2. Do injuries caused by a drive-by shooting "arise out of" the use of a motor vehicle under Section 38-77-140 of the South Carolina Code where the shooting victim was operating a motor vehicle followed by the assailant vehicle and blocked from escape by the assailant vehicle during the shooting?
DISCUSSION
Wife asserts Clarke's investigative report satisfies the plain language of section 38-77-170 because that provision only requires a "witness" rather than the narrower concept of an "eyewitness." Conversely, Allstate contends an affiant must actually observe the underlying events to qualify as a witness. We agree with Allstate.
Ordinarily, an insured has no right of recovery against his insurer for injuries caused by an unknown vehicle, unless three requirements are fulfilled:
(1) the insured or someone in his behalf has reported the accident to some appropriate police authority within a reasonable time, under all the circumstances, after its occurrence;
*756 (2) the injury or damage was caused by physical contact with the unknown vehicle, or the accident must have been witnessed by someone other than the owner or operator of the insured vehicle ; provided however, the witness must sign an affidavit attesting to the truth of the facts of the accident contained in the affidavit;
(3) the insured was not negligent in failing to determine the identity of the other vehicle and the driver of the other vehicle at the time of the accident.
S.C. Code Ann. § 38-77-170 (2015) (emphasis added). Because Silva's injuries were not caused by physical contact with the unknown vehicle, Wife must produce a signed affidavit by someone who witnessed the events. Id.
**517 The cardinal rule of statutory interpretation is to ascertain the intent of the General Assembly. Fullbright v. Spinnaker Resorts, Inc. , 420 S.C. 265, 272, 802 S.E.2d 794, 797 (2017). Furthermore, "The true guide to statutory construction is not the phraseology of an isolated section or provision, but the language of the statute as a whole considered in the light of its manifest purpose." Jackson v. Charleston Cty. Sch. Dist. , 316 S.C. 177, 181, 447 S.E.2d 859, 861 (1994) (quoting Laurens Cty. Sch. Dist. 55 & 56 v. Cox , 308 S.C. 171, 174, 417 S.E.2d 560, 561 (1992) ). However, if a statute is unambiguous, " 'the rules of statutory interpretation are not needed and the court has no right to impose another meaning.' " Fullbright , 420 S.C. at 272, 802 S.E.2d at 797 (quoting Brown v. Bi-Lo, Inc. , 354 S.C. 436, 439, 581 S.E.2d 836, 838 (2003) ).
We have repeatedly noted the purpose of this statute is to protect against fraudulent claims. Gilliland v. Doe , 357 S.C. 197, 199, 592 S.E.2d 626, 627 (2004) (noting the witness requirement is a "safeguard" enacted to prevent fraudulent claims); Wausau Underwriters Ins. Co. v. Howser , 309 S.C. 269, 275, 422 S.E.2d 106, 109 (1992) ("The purpose of the second condition in this statute is to assure adequate proof the accident involved a second unknown vehicle."). While section 38-77-170 does not define "witness," Black's Law Dictionary sets forth two definitions: "1. Someone who sees, knows, or vouches for something < a witness to a testator's signature>. 2. Someone who gives testimony under oath or affirmation (1) in person, (2) by oral or written deposition, or (3) by affidavit < the witness to the signature signed the affidavit>." Witness , Black's Law Dictionary (10th ed. 2014). In keeping with the General Assembly's intent to thwart fraudulent claims, the first definition is more persuasive as it provides a mechanism to dispel improper claims-consistent with the statute's purpose-while the second definition encompasses anyone who signs an affidavit, regardless of whether the claim is proper or fraudulent. Moreover, requiring a witness to observe the facts of the accident is consistent with our jurisprudence.
In Gilliland , this Court addressed the sufficiency of a witness's testimony concerning the causal connection between an unknown driver and the insured's injuries. As Gilliland left a grocery store, two young men followed in their pickup truck. Gilliland , 357 S.C. at 198, 592 S.E.2d at 627. Frightened, **518 Gilliland sped away, but the truck "rode her bumper" for nearly two miles until she lost control and hit a tree. Id. At trial, a witness testified that she saw two sets of headlights come around a curve, and after the accident, the truck's headlights " 'arc[ed] through a field' as if it were making a U-turn." Id. at 198-99, 592 S.E.2d at 627. The Court noted the witness's testimony-from an individual who observed part of the accident-was sufficient circumstantial evidence to survive the respondent's JNOV motion. Id. at 202, 592 S.E.2d at 629.
Our court of appeals has also addressed the requirements of section 38-77-170(2) on several occasions. Tucker v. Doe , 413 S.C. 389, 776 S.E.2d 121 (Ct. App. 2015) ; Bradley v. Doe, 374 S.C. 622, 649 S.E.2d 153 (Ct. App. 2007) ; Shealy v. Doe, 370 S.C. 194, 634 S.E.2d 45 (Ct. App. 2006). In Tucker , a truck driver lost control of his tractor-trailer shortly after midnight when he swerved to avoid a steel bearing block in the road, causing him *757 to collide with a concrete column supporting an overpass. Tucker submitted an affidavit from another motorist who was driving approximately 150 feet behind the truck as it veered off the interstate. Id. at 393, 776 S.E.2d at 124. The motorist stated he observed the truck lose control and strike the concrete column; however, Tucker's insurer asserted the affidavit did not comply with section 38-77-170 because it did not provide information suggesting the unknown driver proximately caused the accident, nor did the affiant see the steel bearing block located in the road. Id. at 398, 776 S.E.2d at 126. The court of appeals rejected that assertion, noting the motorist's account was analogous to the witness's testimony in Gilliland because both observed the accidents in question despite their inability to provide direct evidence of the involvement of an unknown driver. Id. at 401, 776 S.E.2d at 128.
Furthermore, in Bradley , an insured swerved off a road and crashed into a tree after leaving a Waffle House at 3:00 a.m. Bradley, 374 S.C. at 624, 649 S.E.2d at 154. An individual stopped to help and noticed a white trash bag in the road near the scene of the accident. Id. While assisting Bradley, the individual heard another motorist strike the bag, dragging it down the road. Id. at 624, 649 S.E.2d at 155. A third individual, who left the Waffle House shortly before Bradley, noted he narrowly dodged a trash bag in the road near the site of Bradley's crash. Id. Further, approximately a quarter-mile **519 down the road, he observed a street sweeper inadvertently drop a similar trash bag onto the road. Id. In a split decision, the majority held Bradley's failure to produce a witness who actually observed the crash defeated his claim for UM benefits under section 38-77-170. Id. at 633-35, 649 S.E.2d at 159-60.
Finally, in Shealy , two passengers thrown from the bed of a pickup truck when it crashed were not considered "witnesses" when they merely relayed information provided by the driver. Shealy, 370 S.C. at 196, 634 S.E.2d at 46. A day after the accident, the driver informed the passengers he swerved to avoid crashing into an unknown vehicle, and although neither passenger actually observed the driver lose control, both signed an affidavit attesting to the driver's account. Id. at 197, 634 S.E.2d at 46. The court of appeals held Shealy failed to satisfy the witness requirement because neither passenger provided independent evidence that someone other than the driver witnessed the accident. Id. at 205, 634 S.E.2d at 52.
Our jurisprudence thus requires that in order to comply with section 38-77-170(2), the affiant must have observed at least some part of the incident. While circumstantial evidence may be sufficient to satisfy the "truth of the facts" prong of this provision, it does not satisfy the statutory requirement that the affiant actually witness the accident.[3] Moreover, we must honor the General Assembly's effort to balance compensation for those injured by unknown motorists while safeguarding against fraudulent claims. As the court of appeals has recognized, this policy choice occasionally is "lamentable to the injured party, but mandated by the statute." Shealy , 370 S.C. at 201, 634 S.E.2d at 49. Here, Clarke's knowledge is derived solely from his investigation, and he did not observe the underlying facts of Silva's death. While we concede Clarke presents circumstantial evidence of the manner of Silva's death, the statute requires more, specifically, that "the accident must have been witnessed" by the affiant.
**520 S.C. Code Ann § 38-77-170(2). We acknowledge the purpose behind this requirement-to prevent fraudulent claims-is not advanced in this particular case. Indeed, we do not doubt the veracity of Clarke's affidavit; however, we must remain faithful to the language in the statute. As the General Assembly has done before, it certainly is *758 capable of amending this provision.[4] Consistent with the language of the statute, we conclude Clarke does not qualify as a witness because he failed to observe the incident; accordingly, we answer the first question, "No."
Because our answer is dispositive of the underlying claim, we decline to address question two. See Howell v. United States Fid. & Guar. Ins. Co. , 370 S.C. 505, 511, 636 S.E.2d 626, 629 (2006) (declining to address subsequent certified questions when the first is dispositive).
FIRST QUESTION ANSWERED.
BEATTY, C.J., KITTREDGE, FEW and JAMES, JJ., concur.

Section 38-77-170 enables recovery for injuries caused by a phantom driver if three requirements are satisfied. Only the second condition is at issue here, providing, "[t]he injury or damage was caused by physical contact with the unknown vehicle, or the accident must have been witnessed by someone other than the owner or operator of the insured vehicle; provided however, the witness must sign an affidavit attesting to the truth of the facts of the accident contained in the affidavit."

Under the policy covering the motorcycle, Silva had $25,000 per person for bodily injury and $25,000 for property damage. Additionally, Silva was named on a separate policy that covered two cars, with UM limits of $50,000 per person for bodily injury and $50,000 for property damage. Eventually, Allstate tendered $1,602.31 for property damage to the motorcycle.

See Gilliland , 357 S.C. at 201, 592 S.E.2d at 628 (noting circumstantial evidence that an unknown vehicle contributed to the victim's injuries is sufficient to satisfy the "truth of the facts" prong); but see Collins v. Doe , 352 S.C. 462, 470, 574 S.E.2d 739, 743 (2002) ("The plain language of [section] 38-77-170 requires that where the accident involves no physical contact between the insured's vehicle and the unidentified vehicle, the accident must have been witnessed by someone other than the owner or operator of the insured vehicle.").

The General Assembly first enacted the John Doe statute in 1963, which required the insured to show physical contact with the unknown vehicle. In 1987, the statute was amended to enable recovery where there was no physical contact, provided an independent person witness the accident. Finally, two years later, the affidavit requirement was added whereby a witness must attest to the facts, subject to criminal penalties for providing false information. See Gilliland , 357 S.C. at 199-200, 592 S.E.2d at 627-28 ; see also Tucker , 413 S.C. at 399, 776 S.E.2d at 127.